IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SADAR DOE, *et al.*, | ) ) ) | |
| Petitioners | ) ) | Civil Action No. 05-CV-1704 (JR) |
| v. | ) ) | |
| GEORGE W. BUSH, *et al.*, | ) ) | |
| Respondents. | ) ) | |

**PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED FOR LACK OF PROPER "NEXT FRIEND" STANDING AND OPPOSITION TO MOTION TO STAY PROCEEDINGS**

Sadar Doe and Arkeen Doe ("Petitioners") are prisoners held by the United States Government at Guantanamo Bay Naval Station ("Guantanamo Bay"). They have challenged their detention by filing petitions for habeas corpus through their next friend, Usama Hasan Abu Kabir, also a prisoner at Guantanamo Bay.

Respondents have filed a Motion to Show Cause why the Petition for habeas corpus should not be dismissed for lack of proper "Next Friend" standing, or, in the alternative, an order to stay the proceedings pending related appeals ("Show Cause Motion").[1] Petitioners oppose the Show Cause Motion on the grounds that the Next Friend argument is a red herring designed to obfuscate the sustained and consistent deceit practiced by the military in preventing meaningful access to counsel by detainees held at Guantanamo Bay.

---

[1] The Government has challenged the Next Friend filings in eight separate petitions, identified on the caption.

**INTRODUCTION**

Respondents' challenge to the Next Friend standing in Guantanamo Bay detainee cases, especially this one involving claims by Chinese Uighurs, is outrageous. In this case, Petitioners are part of a known, discrete group: Uighur refugees from China, whose identities the Government knows, but has refused to disclose. Uighurs are a Turkic Muslim minority group that has been, and continues to be, brutally oppressed by the communist Chinese government. *See* U.S. DEP'T OF STATE, COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES – 2004 (Feb. 28, 2005), *at* http://www.state.gov/g/drl/rls/hrrpt/2004/41640.htm.

Petitioners are being held virtually incommunicado. Moreover, Respondents have repeatedly and knowingly exercised their physical control of Petitioners to make it impossible to obtain either the assistance of counsel or any meaningful opportunity to vindicate their right to bring habeas petitions.

Compounding the outrageousness of this situation, the Government has admitted in open court that many – *if not most* – of these Uighur detainees have been determined to be "No Longer Enemy Combatants," (even though they never have been enemy combatants) or "NLECs." United States Ambassador at Large for War Crimes, Pierre-Richard Prosper, stated in a recent interview that the US Government has been actively trying to find a country that will take *more than a dozen Uighurs* being held at Guantanamo, with no luck. Source: National Public Radio, Morning Edition, August 25, 2005 "Analysis: Chinese detainees at Guantanamo get hearing," (Transcript available)(emphasis added).[2] *See also*, The Washington Post, August 24, 2005 (US Government has

---

[2] *See, also, e.g.*, Demetri Sevastopulo, "Cheney backs Guantanamo Bay jail amid growing unease," FINANCIAL TIMES (June 13, 2005) ("The US is holding about 550 detainees at Guantanamo, including about a dozen Uighur Chinese whom the US has determined are no longer 'enemy combatants'."); Carol Rosenberg, "Guantanamo Bay: Closing prison would be tricky easy," MIAMI HERALD (June 12, 2005) ("Navy Secretary Gordon England confirmed in March that Guantanamo captives include Chinese Muslims—reportedly about two dozen—who are no longer classified as 'enemy combatants,' the Bush administration term for terrorism suspects."); Editorial, WASH. POST (May 3, 2005) ("[T]he military has determined that about 15 of [the Uighurs at Guantanamo Bay] are not 'enemy combatants.' . . . The

been attempting since 2003 to find a country that will take the Uighurs); interview with Colin Powell, Secretary of State, in Washington, D.C., at 5 (Aug. 12, 2004) ("[T]he Uighurs are a difficult problem and we are trying to resolve all issues with respect to all detainees at Guantánamo. The Uighurs are not going back to China, but finding places for them is not a simple matter, but we are trying to find places for them."). Yet the Uighurs languish in prison at Guantánamo, and the Government continues to assert its authority detain the Uighurs for "as long as it takes." Transcript at 18, Aug. 25, 2005 Status Conf., Qassim v. Bush, Civ. No. 05-497 (JR).

This public information suggest that the Sadar petitioners in this case may be similarly situated. Counsel does not now know the combat classification status of each individual Petitioner, although efforts are being made to expedite security clearance so that interviews can be scheduled and completed. However, the possibility (indeed, likelihood) that these Petitioners have been designated as NLECs, and the unique issues that arise for NLECs who are Uighur refugees from China, alone constitute sufficient grounds for denying the Show Cause Motion.

Petitioners therefore have no choice but to proceed with this action through a Next Friend, until such time that counsel can meet with them to confirm their desire for representation and verify their combat classification status.[3] Rather than making the Petitioners available for interviews and eliminating any doubt that proper next friend standing exists, the Government instead seeks the drastic remedy of dismissal.

## ARGUMENT

**I.    No Order to Show Cause should enter because the Government's position is irrational.**

Incredibly, Respondents argue that "the phenomenon of detainees filing petitions purportedly on behalf of other detainees about whom they have little knowledge presents the practical difficulty

---

Pentagon has, consequently, cleared them for release. The trouble is that the State Department has been unable to find other countries willing to take them.").

[3] Indeed, as this Court is aware, counsel in the Qassim case, CV 05-497(JR), did not know – although the Government had known for months but refused to disclose – that the Petitioners had been cleared by the CSRT until they went to Guantanamo Bay and consulted with their clients.

of identifying the detainees for whom habeas relief is sought." Show Cause Motion at 14. This argument is absolutely bogus in the case of these Petitioners and the other Uighur detainees. There are fewer than two dozen of them; their identities and whereabouts all are known to the Government.

Indeed, as this Court as already perceived, the Government has a data base for all of the detainees.[4] The Government's argument that it is "difficult to identify" the detainees is nothing but a transparent attempt to further obstruct Petitioners' access to the courts by refusing to disclose their identities and thus deny meaningful contact with pro bono lawyers who are willing to represent them.

Closely related to the issue of hidden identities is the Government's history of deceiving the Court as to the non-enemy combatant status of Uighur detainees. In Qassim, for example, the Government knew for months, but did not disclose to the Court or to Petitioners' counsel, that both petitioners there had been cleared and were deemed to be NLECs. *See* Transcript of August 1, 2005 Status Conf. at 3. Despite this knowledge (or perhaps because of it), the Government actively fought giving factual returns and obtained a stay of the case. *Id.* It was not until Qassim petitioners' counsel visited them at Guantánamo that they learned the petitioners had been exonerated. *Id.* Likewise here, because of the concededly high number of Uighurs who have been found to be NLECs, there is a high probability that one or more of these Petitioners has been cleared. Discovering that fact should not be left to happenstance. Yet the Government is withholding that information and insists that these cases should not be heard, purportedly on grounds that it has difficulty identifying the Petitioners.

---

[4] At the August 1, 2005 status conference involving Uighur detainees who had been cleared as NLECs, the Court held this colloquy with Government counsel, Terry Henry: THE COURT: Oh, I think you've got a database. How many people are down there? MR. HENRY: A little over 500. Your Honor, I'm telling you, as – THE COURT: It's easy, isn't it? It's a spreadsheet. It's a spreadsheet, isn't it.? MR. HENRY: I don't know, Your Honor. It Involves our inquiry to the client and that sort of thing. Transcript at 21-22, August 1, 2005 Status Conf., Qassim v. Bush, CV 05-497(JR).

### A. *Habeas corpus proceedings must not be allowed to founder in a procedural morass.*

Our government has never before done what it has allegedly done here: imprisoned people without charging them with any wrongdoing; held them in physical isolation; deliberately impeded their access to counsel; subjected them to physical abuse and other mistreatment; and refused even to disclose their identities to the outside world so that legal, humanitarian, and medical assistance could be provided. Now, even though counsel has been secured and petitions filed, the Government seeks to prevent this Court from knowing who these Petitioners are or allowing these cases to proceed.

As the Supreme Court has repeatedly recognized, "[t]he writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Harris v. Nelson, 394 U.S. 286, 290-91 (1969). For that reason, the Court has made clear, "a habeas corpus proceeding must not be allowed to founder in a 'procedural morass.'" Id. at 291-92 (quoting Price v. Johnston, 334 U.S. 266, 269 (1948)). It is for that reason as well, that "*[t]he scope and flexibility of the writ – its capacity to reach all manner of illegal detention – its ability to cut through barriers of form and procedural mazes – have always been emphasized and jealously guarded by courts* and lawmakers." Id. at 290-91 (emphasis added.) Accord, Hensley v. Municipal Court, 411 U.S. 345, 349-50 1973)(Habeas corpus is "not a static, narrow, formalistic remedy.")

The Government's Show Cause Motion should be recognized for what it is: a blatant attempt to sink this case by causing it to flounder in a procedural morass. The Motion should be denied as antithetical to the jurisprudential foundations of the Great Writ that have sustained it for 800 years as the "fundamental instrument for safeguarding individual freedom" against lawless state action.

### B. *Extraordinary efforts to secure counsel must be recognized.*

Counsel representing Petitioners who have filed in other actions now pending in the District Court for this district have gone to extraordinary lengths to identify detainees so that they may be

afforded the opportunity to vindicate their legal right to challenge their detention. Appended hereto as Exhibits A and B are declarations of counsel Clive Stafford Smith and Barbara Olshansky.  Mr. Smith is the founder of *Justice in Exil*e, an organization dedicated to obtaining representation of prisoners at Guantanamo Bay. Mr. Smith represents all of the Next Friends who have been challenged in this marathon filing, as captioned above.  Ms. Olshansky, counsel with the Center for Constitutional Rights, has filed a John Doe habeas petition on behalf of all of the detainees that have not yet been able to retain counsel.  These counsels' declarations outline the horrifying steps that the Government is taking to keep the prisoners ignorant of the facts that would be necessary for them to make knowing, intelligent, and voluntary decisions concerning their causes. Enforced ignorance is exacerbated by the Government's deceitful practices, such as military investigators impersonating lawyers in an effort to get prisoners to talk.

    Now that pro bono counsel has been secured, the Government still is trying to keep the detainees from seeing the light. However, in attacking the Next Friend status, the Government has stumbled into a trap of its own making. In the Declaration of Frank Sweigart, appended as Exhibit B to the Show Cause Motion, the Government sets forth details of "steps taken by the Department of Defense ("DoD") to notify the detainees . . . of their right to challenge the legality of their detention by filing *habeas corpus* petitions in federal Court." Sweigart Declaration, ¶ 2. In a stunning admission, the Sweigart Declaration states that the written notification allegedly provided to all detainees "tells the detainees that they have the option of ***asking a friend***, family member, or lawyer to file a petition on their behalf" – the very option that the Government is seeking to block in this case.

    The Notice the Government allegedly provided reads in pertinent part: "You may ask a civilian judge to look at the lawfulness of your detention through a process called a *petition for a*

*writ of habeas corpus.* You **may ask a friend** or family member or a lawyer to file such a petition with the court. If you do not have a lawyer or a family member **or a friend** who could file this petition for you, you may file your own petition." Exhibit A to Schweigart Declaration. Note that the Notice does not explain what a petition for writ of habeas corpus is, let alone how they should go about obtaining a lawyer. Obviously, asking a friend, the first option offered by the Government, is the only route available to a detainee cut off from family and ignorant of the law.

Having reviewed the Government's notification while in Guantanamo Bay, Mr. Smith determined that various of his clients wanted to act as next friends for other prisoners with whom they have become friendly while in the prison. Smith Declaration, ¶ 75. He states: "I have carefully instructed them on the legal meaning of next friend in the U.S. legal context and I have asked them to be sure that the prisoners for whom they act desire legal assistance."

Mr. Smith is well-known to the Government lawyers, having made dozens of trips to Guantanamo Bay, most recently in August, 2005. On information and belief, the Government's lawyers specifically asked Mr. Smith, prior to that visit, to gather information from his clients (including Usama Hasan Abu Kabir – the Next Friend in this case) regarding the Uighur detainees, including Petitioners. Given this explicit recognition that Next Friend Kabir (among others) is in a position to provide details about the Uighur detainees, it is supremely ironic that the Government now brings its Show Cause Motion challenging the legitimacy of the Next Friends in this and all other pending cases.

## II. COUNSEL MUST BE ALLOWED TO CONSULT WITH CLIENTS

The Government approvingly reports in the Show Cause Motion that the American Bar Association ("ABA") has "agreed to recruit volunteer counsel for pro se petitioners and other detainees who request assistance of counsel in filing a petition for writ of habeas corpus." Show

7

Cause Motion, at 9; Schweigart Declaration, ¶ 7. It is hard to imagine that detainees will feel comfortable asking their jailers for a list of counsel "approved" by the Government, particularly when they already are represented through their Next Friend by willing pro bono counsel. It is even harder to imagine that those who do not file pro se petitions prefer lifelong incarceration to representation by counsel.

As Judge Green recognized, "Petitioners cannot be expected to exercise this right (of habeas corpus) without the assistance of counsel. Al Odah v. United States, 346 F. Supp. 2d, 1, 8 (D.D.C. 2004):

> [Petitioners] have been detained virtually incommunicado for nearly three years without being charged with any crime. To say the Petitioners' ability to investigate the circumstances surrounding their capture and detention is 'seriously impaired' is an understatement. The circumstances of their confinement render their ability to investigate nonexistent. Furthermore, it is simply impossible to expect Petitioners to grapple with the complexities of a foreign legal system and present their claims to this Court without legal representation. Petitioners face an obvious language barrier, have no access to a law library, and almost certainly lack a working knowledge of the American legal system.

Id. (emphasis added)(quoting Battle v. Armontrout, 902 F.2d 701, 702 (8th Cir. 1990).

Petitioners Sadar and Arkeen actually managed, against the odds set by the Government, to inform a next friend that they desperately want and need counsel. If identification is a problem – which it cannot reasonably be – there is a simple solution:

- provide counsel with an opportunity to speak with the Next Friend;
- release the names and identifying information of the detainees named by the Next Friend;
- release the Petitioners' factual returns from the CSRT proceedings;
- expedite security clearance and allow use of Uighur translators that may not have U.S. passports.

Once counsel obtains the names and identifying information for Sadar Doe and Arkeen Doe, counsel will consult with each, explain his right to file a habeas petition based on his individual

8

circumstances, and determine whether the detainee wants to proceed with the habeas action. In the unlikely event that either Petitioner does not wish to file a habeas petition, counsel will promptly notify the Government and the Court.

**CONCLUSION**

The Government must be stopped from this illegitimate attempt to obstruct Petitioners' access to the courts by challenging their Next Friend's status and denying meaningful contact between the Petitioners and their pro bono counsel.

Dated: September 12, 2005                                COUNSEL FOR PETITIONERS:

Of Counsel:

| | |
|---|---|
| Barbara Olshansky | _Elizabeth P. Gilson /s/_____ |
| Deputy Director | Elizabeth P. Gilson |
| CENTER FOR CONSTITUTIONAL RIGHTS | CT 002480 |
| | 383 Orange Street |
| 666 Broadway, 7th Floor | New Haven, CT 06511 |
| New York, NY 10012 | Telephone: (203) 777-4050 |
| Telephone: (212) 614-6439 | Facsimile: (203) 787-3259 |

## CERTIFICATION OF SERVICE

This is to certify that on this 12th day of September, 2005, a copy of the foregoing was served on the following, by prepaid priority mail to:

PETER D. KEISLER
Assistant Attorney General

KENNETH l. Wainstein,
 United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel


United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W. Rm. 7144
Washington, DC 20530

                                                             Elizabeth P. Gilson /s/
                                                     _____
                                                    Elizabeth P. Gilson