# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SADAR DOE, ET AL, | ) | |
| _____ Detainees | ) | |
| Guantánamo Bay Naval Station | ) | |
| Guantánamo Bay, Cuba, | ) | |
| | ) | |
| *Petitioners,* | ) | PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS |
| | ) | |
| v. | ) | No. 05-CV-1704 (JR) |
| | ) | |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States | ) | |
| The White House | ) | |
| 1600 Pennsylvania Ave., N.W. | ) | |
| Washington, D.C. 20500; | ) | |
| | ) | |
| DONALD RUMSFELD, | ) | |
| Secretary, United States | ) | |
| Department of Defense | ) | |
| 1000 Defense Pentagon | ) | |
| Washington, D.C. 20301-1000; | ) | |
| | ) | |
| ARMY BRIG. GEN. JAY HOOD, | ) | |
| Commander, Joint Task Force - GTMO | ) | |
| Guantánamo Bay Naval Station | ) | |
| Guantánamo Bay, Cuba; | ) | |
| | ) | |
| ARMY COL. NELSON J. CANNON, | ) | |
| Commander, Camp Delta, | ) | |
| Guantánamo Bay Naval Station | ) | |
| Guantánamo Bay, Cuba; | ) | |
| | ) | |
| National Intelligence Director, | ) | |
| Washington, D.C.; and | ) | |
| | ) | |
| PORTER J. GOSS | ) | |
| Director of Central Intelligence | ) | |
| Central Intelligence Agency | ) | |
| Washington, D.C.  20505, | ) | |
| | ) | |

*Respondents.* )
*All sued in their individual capacity* )

**DECLARATION BY ATTORNEY BARBARA OLSHANSKY**

I, Barbara Olshansky, declare that the following statements are true to the best of my

knowledge, information, and belief:

1.      I am a member in good standing of the bar of this Court and have

practiced law for 18 years.  I am also an attorney in good standing in the State of New

York.

2.      For the last three years, I have been actively involved in the steps that my

office, the Center for Constitutional Rights (CCR), has taken to (1) advance the rights of

the Guantánamo detainees through litigation establishing their right to file petitions for

writs of *habeas corpus* in federal court; (2) work with other non-profit organizations to

reach out to the family members of the Guantánamo detainees for the purpose of filing

next-friend petitions for writs of *habeas corpus*; and (3) recruit and train private attorneys

to represent individual Guantánamo detainees on a *pro bono* basis.

3.      CCR has engaged in extensive litigation, advocacy and public education

on behalf of the individuals detained at Guantánamo Bay, including the following:

> A.      *Request to Inter-American Commission on Human Rights for Precautionary Measures on Behalf of the Guantánamo Detainees.* In February of 2002, CCR requested that the Inter-American Commission on Human Rights (IACHR) of the Organization of American States issue precautionary measures to protect the detainees at Guantánamo Bay.  On March 12, 2002, the IACHR requested that the U.S. Government take the urgent measures necessary to have the legal status of the detainees determined by a competent tribunal.  The U.S. Government has failed to comply and continues to fail to comply with the IACHR's request.  *See* Decision on Request for Precautionary Measures (Detainees at Guantánamo Bay, Cuba), Inter-Am. C.H.R. (Mar. 12, 2002), *reprinted in* 41 I.L.M. 532, 533 (2002).

B.    *Habib v. Bush & Rasul v. Bush.*  In February and May of 2002 CCR filed *habeas corpus* petitions challenging the U.S. government's practice of holding foreign nationals in indefinite detention at Guantánamo without access to the courts or the right to know the charges against them. CCR filed the petitions on behalf of two Australian citizens, David Hicks and Mamdouh Habib, and two men from the United Kingdom, Shafiq Rasul and Asif Iqbal. The petitions challenged respondents' indefinite detention of petitioners without due process of law, in violation of the U.S. Constitution and other federal laws, the Geneva Conventions, and international humanitarian and human rights law.  CCR and its co-counsel litigated the case before the District Court, the D.C. Circuit Court of Appeals, and the United States Supreme Court.  On June 28, 2004, the Supreme Court held that the detainees have the right of access to U.S. courts to challenge their detention under 28 U.S.C. § 2241. *Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).

4.    Responding to the Supreme Court's historic decision upholding the rule of law at Guantánamo, CCR has spearheaded the effort to get each detainee his day in court. Since the Supreme Court decision, CCR and its partners have arranged for private law firms to represent detainees and file *habeas corpus* petitions on a pro bono basis in this Court.  Through these efforts, more than 200 detainees currently have *habeas corpus* petitions pending in this Court.

5.    Because the U.S. government has refused to provide CCR or any other organization or attorney access to the Guantánamo detainees in any manner that would facilitate providing them advice regarding their right to file a habeas petition and the availability of pro bono counsel to represent them, each of the petitions currently on file with this Court was made possible through one of two means:  (i) requests by the family members or loved ones of those detained for legal assistance from CCR or from other human rights organizations or counsel with whom CCR is working; or (ii) requests made through certain detainees (who are represented by counsel) acting as next friends for

other detainees who have expressed their desire to retain counsel and file habeas petitions.

6.    More specifically, CCR and its partner organizations received authorizations from next friends through outreach activities which included, among other things, taking part in human rights conferences around the world, contacting international human rights organizations, and searching for family members of known detainees.  In addition, advocates working with CCR made numerous outreach efforts to member countries of the European Parliament seeking their assistance in locating their citizens. Despite these efforts, CCR and its partners have not been able to identify next friends for the vast majority of Guantánamo detainees.

7.    CCR and its partners have used the information they have obtained to date to match detainees with private law firms willing to represent detainees on a *pro bono* basis and file *habeas corpus* petitions on the detainees' behalf.

8.    However, despite the work of CCR and its *pro bono* partners, the vast majority of detainees at Guantánamo – upon information and belief, approximately 300 – remain unrepresented for the simple reason that the United States Government has held them virtually incommunicado and in physical isolation.

9.    The Government's refusal to disclose the names of the Petitioners, to provide the Petitioners with meaningful notice of their rights, and to permit CCR or any similar organization to communicate with them regarding these rights has prevented the Petitioners from being able to access and obtain counsel to do what the Supreme Court said they have a right to do—file *habeas* petitions challenging the legality of their detention.

10.    In addition to its own efforts as described above, CCR has also tried to work with the United States Government to ensure that every detainee at Guantánamo is able to take advantage of his right to file a *habeas corpus* petition, as affirmed by the U.S. Supreme Court in *Rasul v. Bush*.

11.    Despite a number of good faith efforts to negotiate with Respondents, CCR has been denied any opportunity to communicate with the detainees at Guantánamo to advise them of their rights, and assist them in retaining counsel.

12.    In a July 1, 2004 letter to Respondent Rumsfeld, CCR Legal Director Jeffrey Fogel requested immediate access to the unrepresented detainees. Mr. Fogel offered to organize a delegation of lawyers to travel to Guantánamo to inform them of their rights under *Rasul*, and to assist them in obtaining legal representation. A true and correct copy of that letter is attached to this Declaration as Exhibit A. Mr. Fogel did not receive any reply to his request.

13.    Mr. Fogel subsequently contacted Gordon England, Secretary of the Navy, by letter dated July 14, 2004. In this letter, Mr. Fogel stated that the detainees had still not been adequately informed of their rights under *Rasul*, and again offered to lead a delegation of lawyers to Guantánamo to provide detainees with information about their rights under *Rasul* and to aid them in seeking legal representation. A true and correct copy of the July 14, 2004 letter is attached to this Declaration as Exhibit B.

14.    Alberto J. Mora, General Counsel of the Navy, responded to CCR's July 14 letter by letter dated July 20, 2004. Mr. Mora stated that the "Department of Defense and the Department of the Navy are in the process of exploring, in concert with the Department of Justice, the manner in which additional information will be provided to the

detainees regarding habeas corpus applications."  Mr. Mora did not provide any concrete

information regarding how these Departments would provide the detainees with

information about their rights, nor did he indicate any willingness to negotiate access to

the unrepresented detainees by CCR or any other counsel.  A true and correct copy of

July 20, 2004 letter is attached to this Declaration as Exhibit C.

15.     In another attempt to assist the Guantánamo detainees, CCR attorney

Shayana Kadidal, sought to apply for security clearance in order to meet with

unrepresented detainees.  The Solicitor General's Office informed Mr. Kadidal that it

only handled security clearances for existing petitions and he would have to seek access

to the unrepresented detainees through the Department of Defense General Counsel's

Office, which stated it would handle the clearance "like any other request for a visit to

Guantánamo."

16.     On September 16, 2004, Mr. Kadidal applied for clearance through the

Department of Defense.  A true and correct copy of Mr. Kadidal's application is attached

to this Declaration as Exhibit D.  Mr. Kadidal's application was denied by letter dated

November 2, 2004.  Mr. Kadidal did not receive the November 2, 2004 letter until

December 8, 2004.   The November 2, 2044 letter stated that:

> Under procedures set up by the Department of Defense, the only counsel
> currently provided access to the detainees are counsel who are employed
> or retained by or on behalf of a detainee for purposes of representing the
> detainee in habeas corpus or other litigation in federal court in the United
> States …

A true and correct copy of the November 2, 2004 letter is attached to this Declaration as

Exhibit E.

17.     On December 17, 2004, CCR sent yet another letter to Secretary England requesting the names and identifying information of all unrepresented detainees at Guantánamo, so that CCR could contact the remaining detainees or their family members, to advise them of their rights under *Rasul* and of the availability of volunteer lawyers to assist them in bringing *habeas* actions.   A true and correct copy of that letter is attached to this Declaration as Exhibit F.

18.     This request was also denied.  In a letter dated January 14, 2005, Principal Deputy Associate Attorney General Brian Boyle stated that the Department of Defense: "believe[s] that each of [CCR's] concerns is being effectively addressed by the habeas filing opportunities currently afforded detainees, or is of marginal bearing on the issue of detainee access to the habeas process."  A true and correct copy of that letter is attached to this Declaration as Exhibit G.

19.     The Government has also failed to adequately inform the unrepresented detainees of their rights.  Between July 12 and 14, 2004, each detainee apparently was given a notice (the "July Notification") stating:

> . . . United States courts have jurisdiction to consider petitions brought by enemy combatants held at this facility that challenge the legality of their detention.  **You will be notified in the near future what procedures are available should you seek to challenge your detention in U.S. courts.** (emphasis added)

20.     Notwithstanding this promise by the Government, for more than five months, the Government did nothing to adequately explain the "procedures … available should [the detainees] seek to challenge [their] detention in U.S. courts."

21.     In mid-December 2004, the Department of Defense posted on its website a second notification (the "December Notification") which addresses the possibility of the

detainees' seeking *habeas* relief.  But the December Notification, like the July

Notification, did not provide detainees with practical information that would in any way

enable them to secure counsel to file a petition in court.  In fact, the December

Notification merely informs detainees that they can file their *own habeas* corpus

petitions.

    22.    We believe that the Government's July and December Notifications are

inadequate to enable the unrepresented detainees to make and implement meaningful

decisions as to the filing of *habeas corpus* petitions.  It is especially significant in this

regard that CCR and other *habeas* counsel have received information that corroborates

the repeated reports by the press and official investigative bodies:  many of the detainees

may be in poor physical and mental condition.  *See*, *e.g.*, United Nations Press Release,

"United Nations Human Rights Experts Express Continued Concern About Situation of

Guantánamo Bay Detainees," Feb. 4, 2005.  The unrepresented detainees, moreover, are

now beginning the fourth year of a detention that makes it nearly impossible for them to

contact the outside world.

    23.    The additional information dissemination plans outlined in Mr. Boyle's

January 14, 2005 letter did not cure these deficiencies.  Mr. Boyle states that the

Department of Defense plans to provide a "supplemental information sheet with the

names and addresses of U.S. lawyers" to "detainees who inquire about the availability of

a lawyer for purposes of filing a habeas petition."  *See* Exhibit G.  But the detainees

cannot be expected to trust the military officers who serve as their custodians and

interrogators to provide them with attorneys who will act as zealous advocates on their

behalf.  As a consequence, it seems highly unlikely that the detainees will ask their

captors for help, or trust their statements.  Moreover, the "supplemental information," should it materialize, does not aid those detainees who are physically or mentally unable to express an interest in advocating on their own behalf.

I declare, under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 9th day of September, 2005, New York, New York.

_____
Barbara Olshansky (NY0057)