IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ARKINA AMAHMUD | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1704 (JR) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| *et al.,* | ) | |
| Respondents. | ) | |
| | ) | |

## DECLARATION OF JOSEPH S. IMBURGIA

Pursuant to 28 U.S.C. § 1746, I, Major Joseph S. Imburgia, Judge Advocate General's

Corps, United States Air Force, hereby state that to the best of my knowledge, information and

belief, the following is true, accurate and correct:

1.    I am the Assistant Legal Advisor to the Office for the Administrative Review of

the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC).  In

that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.    I hereby certify that the documents attached hereto constitute a true and accurate

copy of the portions of the record of proceedings before the Combatant Status Review Tribunal

related to petitioner Arkina Amahmud that are suitable for public release.  The portions of the

record that are classified or considered law enforcement sensitive are not attached hereto or are

redacted.   An OARDEC staff member has redacted information that would personally identify

other detainees and certain U.S. Government personnel in order to protect the personal privacy

and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  20 Sep 05

Joseph S. Imburgia
MAJ, JAGC, USAF



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: **7 5 4**

**2 3 JAN** 2005

FOR OFFICIAL USE ONLY

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 103**

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #103 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY

UNCLASSIFIED

18 Jan 05

MEMORANDUM

From: Assistant Legal Advisor
To:   Director, Combatant Status Review Tribunal
Via:  Legal Advisor

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
FOR DETAINEE ISN #103

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl: (1) Appointing Order for Tribunal #15 of 12 Oct 2004
      (2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I
find that:

   a. The detainee was properly notified of the Tribunal process and elected to participate in
   the CSRT. The detainee attended the CSRT, and requested that his personal
   representative make an unsworn statement on the detainee's behalf, which consisted of
   the detainee's responses to the summary of evidence set forth in Exhibit R-1. *See*
   Enclosure (3) to Encl.(2). In addition, the detainee made a brief statement after the
   personal representative provided this evidence on detainee's behalf.

   b. The Tribunal was properly convened and constituted by enclosure (1).

   c. The Tribunal substantially complied with all provisions of references (a) and (b).

   d. Note that some information in Exhibits R-4 and R-6 was redacted. The FBI properly
   certified in exhibit R-2 that the redacted information would not support a determination
   that the detainee is not an enemy combatant.

   e. The detainee did not request that any witnesses or evidence be produced.

   f. The Tribunal's decision that detainee #103 is properly classified as an enemy
   combatant was unanimous.

   g. The detainee's Personal Representative was given the opportunity to review the
   record of proceedings, and declined to submit post-tribunal comments to the Tribunal.

UNCLASSIFIED

UNCLASSIFIED

Subj:   LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
        FOR DETAINEE ISN # 103

2.  The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

KAREN M. GIBBS
CDR, JAGC, USNR



Department of Defense
Director, Combatant Status Review Tribunals

12 Oct 04

From:  Director, Combatant Status Review Tribunals

Subj:  APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #15

Ref:   (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal
established by "Implementation of Combatant Status Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004
is hereby convened.  It shall hear such cases as shall be brought before it without further
action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

            MEMBERS:

                     ███████████ Colonel, U.S. Air Force; President

                     ███████████ Lieutenant Colonel, U.S. Air Force; Member
            (JAG)

            ████████████ Lieutenant Commander, U.S. Navy; Member

                     J. M. McGARRAH
                     Rear Admiral
                     Civil Engineer Corps
                     United States Navy



# HEADQUARTERS, OARDEC FORWARD
### GUANTANAMO BAY, CUBA
### APO AE 09360

27 December 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander ICO ISN 103

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ████████

*For*

CHARLES E. JAMISON
CAPT, USN

SECRET//NOFORN//X1

### (U) <u>Combatant Status Review Tribunal Decision Report Cover Sheet</u>

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: ____#15____

(U) ISN#: ____103____

Ref:    (a) (U) Convening Order for Tribunal #15 of 12 October 2004 (U)
        (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
        (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:    (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
       (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
       (3) (U) Summary of Detainee/Witness Testimony (U/FOUO)
       (4) (U) Copies of Documentary Evidence Presented (S/NF)
       (5) (U) Personal Representative's Record Review (U/FOUO)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 17 November 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #103 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, the East Turkistan Islamic Movement (ETIM) and Taliban, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



_____
Colonel, USAF
Tribunal President

DERV FM: Multiple Sources
DECLASS: X1

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: \_\_\_\_ #15 \_\_\_\_
ISN #: \_\_\_\_\_ 103 \_\_\_\_

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and is a member of, or affiliated with, the East Turkistan Islamic Movement (ETIM) and the Taliban. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the detainee traveled from China to Afghanistan from August to September 2001. The detainee stayed in Kabul during the U.S. bombing campaign. The detainee traveled with an individual who may be involved with the East Turkistan Islamic Party (ETIP) also known as the East Turkistan Islamic Movement (ETIM). The detainee fled Kabul to Konduz, Afghanistan and was captured by the Northern Alliance in Mazar-E-Sharif. The detainee chose to participate in the Tribunal process. He called no witnesses. He did not request any documents be produced. The detainee requested the Personal Representative provide the Tribunal his responses to the unclassified summary of evidence and he made a short statement. The Tribunal President's evidentiary and witness rulings are explained below.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a and R-1 through R-15.

    b. Testimony of the following persons: none.

    c. Unsworn statement of the detainee.

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested no witnesses. No rulings were required.

The Detainee requested no additional evidence be produced. No rulings were required.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

### 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

a. The recorder offered Exhibits R-1, R-2 and R-3 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 provided no usable evidence. Exhibit R-3 is an abbreviated copy of an US Department of Homeland Security document entitled "Terrorist Organization Reference Guide" which provided information on the East Turkistan Islamic Movement (ETIM). Accordingly, the Tribunal had to look primarily to classified exhibits for support of the Unclassified Summary of Evidence.

b. Essentially the only unclassified evidence the Tribunal had to consider was the detainee's unsworn statement and the Personal Representative's notes from prior interviews with the detainee. A summarized transcript of the PR's statement and the detainee's remarks during the tribunal is attached as CSRT Decision Report Enclosure (3). In sum, the detainee affirmed most of the unclassified evidence, but had no knowledge of an individual he traveled with who may be involved with the ETIM. He also said he had no knowledge of ETIM being listed as a terrorist organization.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

### 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

### 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

b. The detainee understood the Tribunal proceedings. He asked no questions regarding his rights and actively participated in the hearing. He indicated that he understood the proceedings, fully participated in his hearing, asked relevant questions, and provided helpful information during the statements provided by his Personal Representative.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

   c.  The detainee is properly classified as an enemy combatant and is a member of, or affiliated with, the Eastern Turkistan Islamic Movement (ETIM) and Taliban.

## 8.  Dissenting Tribunal Member's report

None.  The Tribunal reached a unanimous decision.

Respectfully submitted,



olonel, USAF

Tribunal President

UNCLASSIFIED/~~FOUO~~

### Summarized Unsworn Detainee Statement

*The Tribunal President read the hearing instructions to the detainee. The detainee confirmed that he understood the process and had no questions.*

*The Recorder presented Exhibits R-2 and R-3 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).*

*The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

*The Detainee did not want to take part of the tribunal process.*

The Tribunal President has two clarifying questions in reference to the Detainee Election Form.

1. It states that the detainee did not request any documentary evidence; there is a reply that says yes. Please clarify that remark.

Personal Representative: Sir, he did not want any documents, he had no documents that he needed to be read to the Tribunal Members.

Tribunal President: I understand.

2. There is a statement regarding that; the detainee refused to acknowledge Personal Representative or respond. The remark here is No.

Personal Representative: Sir, the detainee did respond appropriately and did ask questions and identified each of the allegations.

Tribunal President: Very well. He did not request any documents, and he acknowledged your presence and your offer of assistance. Also from the detainee election form I understand he did not request any witnesses. Is that correct?

Personal Representative: Yes, Sir.

*The detainee wants the Personal Representative to read his statements of each of the allegations on behalf of the detainee; He had given answers to the allegations at a previous interview to the Personal Representative. The allegations appear in italics, below.*

*3.a.1. The detainee traveled from China in August 2001 and arrived in Afghanistan in September 2001.*

Personal Representative: True.

ISN# 103
Enclosure (3)
Page 1 of 3

UNCLASSIFIED/~~FOUO~~

*3.a.2. The detainee stayed at a guesthouse in Kabul, Afghanistan for approximately six weeks.*

Personal Representative: Yes.

*3.a.3. The detainee was in Afghanistan when the U.S. bombing campaign began.*

Personal Representative: Yes.

*3.a.4. The detainee traveled with an individual who may be involved with the East Turkistan Islamic Party (ETIP) aka East Turkistan Islamic Movement (ETIM).*

Personal Representative: It's possible; I cannot say anything about that.

*3.a.5. The East Turkistan Islamic Movement is listed in the U.S. Department of Homeland Security, Terrorist Organization Reference Guide, as being one of the most militant groups, and has with ties to al Qaida.*

Personal Representative: I don't know.

*3.a.6. The detainee fled from Kabul to Kandus, Afghanistan when the U.S. bombing campaign started.*

Personal Representative: Yes.

*3.a.7. The detainee was captured by the Northern Alliance in Mazar-E-Sheriff.*

Personal Representative: I don't know if I was at Mazar-E-Sheriff or captured by northern alliance. It was with a lot of other people.

*3.a.8. The detainee was present during a Mazar-E-Sheriff prison uprising.*

Personal Representative: Yes, True.

Tribunal President: Arkin Mahmud do you have any comments regarding what the Personal Representative provided to us.

Detainee: I have no more comments, that is good enough evidence, which my Personal Representative already presented. What I wanted to do was go to Afghanistan to look for my brothers. I wanted the US Court system or US Judges to determine my case, they have to come up with, if I am innocent or not. If I am guilty they should come up with my punishment or what ever I deserve to serve time, I will do that. Other wise do something faster to finish my case. I would like the results as soon as possible.

Tribunal President: Were the statements the Personal Representative provided to us about your earlier statements accurate?

UNCLASSIFIED/~~FOUO~~.

Detainee: Yes, that's accurate.

*The Personal Representative and the Recorder had no further questions.*

*The Tribunal President confirms that the detainee had no further evidence or witnesses to present to the Tribunal. The Tribunal President explains the remainder of the Tribunal process to the detainee and adjourns the Tribunal.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

███████████████████████
                      Colonel, USAF
Tribunal President

## DETAINEE ELECTION FORM

|  |  |
|---|---|
| **Date:** | 15 Nov 04 |
| **Start Time:** | 1300 |
| **End Time:** | 1400 |

**ISN#:** _____ 103 _____

**Personal Representative:** ██████████████ MAJ., USAF

**Translator Required?** YES          **Language?**          UIGHUR

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** _____ YES

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Detainee Election:**

[X]   **Wants to Participate in Tribunal**

[ ]   **Affirmatively Declines to Participate in Tribunal**

[ ]   **Uncooperative or Unresponsive**

**Personal Representative Comments:**

Will speak to each piece of evidence.  Yes
Requests PR speak on his behalf.  No
Requests PR read each piece of evidence one at a time so detainee can respond to each.  Yes.
Detainee did not request any witnesses.  Yes
Detainee did not request any documentary evidence.  Yes
Detainee refused to acknowledge PR or respond.  No

Personal Representative ████████████████████

# UNCLASSIFIED

## Combatant Status Review Board

TO: Personal Representative

FROM: OIC, CSRT (9 November 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – MAHMUD, Arkin

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that the detainee is associated with forces that are engaged in hostilities against the United States or its coalition partners.

   A. The detainee is associated with forces that are engaged in hostilities against the United States or its coalition partners:

      1. The detainee traveled from China in August 2001 and arrived in Afghanistan in September 2001.

      2. The detainee stayed at a guesthouse in Kabul, Afghanistan for approximately six weeks.

      3. The detainee was in Afghanistan when the U.S. bombing campaign began.

      4. The detainee traveled with an individual who may be involved with the East Turkistan Islamic Party (ETIP) aka East Turkistan Islamic Movement (ETIM).

      5. The East Turkistan Islamic Movement is listed in the U.S. Department of Homeland Security, Terrorist Organization Reference Guide, as being one the most militant groups, and has with ties to al Qaida.

      6. The detainee fled from Kabul to Konduz, Afghanistan when the U.S. bombing campaign started.

      7. The detainee was captured by the Northern Alliance in Mazar-E-Sharif.

      8. The detainee was present during the Mazar-E-Sharif prison uprising.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

## Memorandum



|       |                                                                                 |          |            |
|-------|---------------------------------------------------------------------------------|----------|------------|
| To    | : Department of Defense<br>Office of Administrative Review<br>for Detained Enemy Combatants<br>Capt. Charles Jamison, OIC, CSRT | Date | 11/08/2004 |

From :    FBI GTMO
          Counterterrorism Division
          Asst. Gen. Counsel ██████████████

Subject   REQUEST FOR REDACTION OF
          NATIONAL SECURITY INFORMATION
          ████████████████

          Pursuant to the Secretary of the Navy Order of 29 July
2004, Implementation of Combatant Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba,
Section D, paragraph 2, the FBI requests redaction of the
information herein marked[1].  The FBI makes this request on the
basis that said information relates to the national security of
the United States[2].  Inappropriate dissemination of said
information could damage the national security of the United
States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

          The FBI certifies the aforementioned redaction contains
no information that would support a determination that the
detainee is not an enemy combatant.

          The following documents relative to ISN 103 have been
redacted by the FBI and provided to the OARDEC:

FD-302 dated 06/18/02
FD-302 dated 07/28/03

---

[1]Redactions are blackened out on the OARDEC provided FBI document.

[2]See Executive Order 12958

PS\102   R2

Memorandum from Donald Klein to Capt. Charles Jamison
Re:  REQUEST FOR REDACTION, 11/08/2004


    If you need additional assistance, please contact Asst.
Gen. Counsel Craig King ████████████ ████████ ████ Intelligence Analyst (IA)
████████████████ ██ ████ ██████ ██ ████ ████
██ IA ████████ ████████ ████████████████████████

-2-

3.5



**U.S. Department of Homeland Security**
**U.S. Customs and Border Protection**
**Office of Border Patrol**

# Terrorist Organization
# Reference Guide

**January 2004**

PS1-74    R3

43. Army for the Liberation of Rwanda (ALIR) ............................................................ 44
44. Cambodian Freedom Fighters (CFF) ................................................................... 45
45. Communist Party of Nepal (Maoist)/ United People's Front .................................. 46
46. Continuity Irish Republican Army (CIRA) .............................................................. 47
47. Eastern Turkistan Islamic Movement (ETIM) ....................................................... 47
48. First of October Antifascist Resistance Group (GRAPO) ..................................... 48
49. Harakat ul-Jihad-I-Islami (HUJI) ......................................................................... 49
50. Harakat ul-Jihad-I-Islami/Bangladesh (HUJI-B) .................................................. 50
51. Hizb-I Islami Gulbuddin (HIG) ............................................................................. 50
52. Hizb ul-Mujahedin (HM) ...................................................................................... 51
53. Irish Republican Army (IRA) ................................................................................ 52
54. Islamic Army of Aden (IAA) ................................................................................ 53
55. Islamic International Peacekeeping Brigade (IIPB) .............................................. 54
56. Jamiat ul-Mujahedin (JUM) ................................................................................ 55
57. Japanese Red Army (JRA) .................................................................................. 55
58. Kumpulan Mujahidin Malaysia (KMM) ................................................................. 56
59. Libyan Islamic Fighting Group ............................................................................. 57
60. Lord's Resistance Army (LRA) ............................................................................ 58
61. Loyalist Volunteer Force (LVF) ............................................................................ 58
62. Moroccan Islamic Combatant Group (GICM) ....................................................... 59
63. New Red Brigades/Communist Combatant Party (BR/PCC) ................................ 60
64. People Against Gangsterism and Drugs (PAGAD) .............................................. 61
65. Red Hand Defenders (RHD) ............................................................................... 62
66. Revolutionary Proletarian Initiative Nuclei (NIPR) .............................................. 62
67. Revolutionary United Front (RUF) ...................................................................... 63
68. Riyadus-Salikhin Reconnaissance and Sabotage Battalion of Chechen Martyrs  64
69. Sipah-I-Sahaba/Pakistan (SSP) ......................................................................... 65
70. Special Purpose Islamic Regiment (SPIR) .......................................................... 65
71. The Tunisian Combatant Group (TCG) ................................................................ 66
72. Tupac Amaru Revolutionary Movement (MRTA) .................................................. 67
73. Turkish Hizballah ................................................................................................. 68
74. Ulster Defense Association/Ulster Freedom Fighters (UDA/UFF) ........................ 68

**Terrorist Exclusion List** ........................................................................................ 71

**Mexican Insurgent/Guerrilla Organizations** ......................................................... 77

End Notes ................................................................................................................. 84

PS 2014

## 46.    Continuity Irish Republican Army (CIRA)

### Description

Terrorist splinter group formed in 1994 as the clandestine armed wing of Republican Sinn Fein (RSF), which split from Sinn Fein in 1986.  "Continuity" refers to the group's belief that it is carrying on the original IRA goal of forcing the British out of Northern Ireland.  Cooperates with the larger Real IRA.

### Activities

CIRA has been active in Belfast and the border areas of Northern Ireland where it has carried out bombings, assassinations, kidnappings, hijackings, extortions, and robberies.  On occasion, it has provided advance warning to police of its attacks.  Targets include British military, Northern Ireland security targets, and loyalist paramilitary groups.  Unlike the Provisional IRA, CIRA is not observing a cease-fire.  CIRA continued its bombing campaign in 2002 with an explosion at a Belfast police training college in April and a bombing in July at the estate of a Policing Board member; other CIRA bombing attempts in the center of Belfast were thwarted by police.

### Strength

Fewer than 50 hard-core activists.  Eleven CIRA members have been convicted of criminal charges and others are awaiting trial.  Police counterterrorist operations have reduced the group's strength, but CIRA has been able to reconstitute its membership through active recruiting efforts.

### Location/Area of Operation

Northern Ireland, Irish Republic.  Does not have an established presence on the UK mainland.

### External Aid

Suspected of receiving funds and arms from sympathizers in the United States.  May have acquired arms and materiel from the Balkans in cooperation with the Real IRA.

## 47.    Eastern Turkistan Islamic Movement (ETIM)

### Description

The Eastern Turkistan Islamic Movement (ETIM), a small Islamic extremist group based in China's western Xinjiang Province, is one of the most militant of the ethnic Uighur separatist groups pursuing an independent "Eastern Turkistan," which would include Turkey, Kazakhstan, Kyrgyzstan, Pakistan, Afghanistan, and Xinjiang.  ETIM and other

Pg 3 of 4

overlapping militant Uighur groups are linked to the international mujahidin movement - and to a limited degree al-Qaeda - beginning with the participation of ethnic Uighur mujahidin in the Soviet/Afghan war.

## Activities

US and Chinese Government information suggests ETIM was responsible for terrorist acts inside and outside China. Most recently, in May 2002, two ETIM members were deported to China from Kyrgyzstan for plotting to attack the US Embassy in Kyrgyzstan as well as other US interests abroad.

## Strength

Unknown.  Only a small minority of ethnic Uighurs supports the Xinjiang independence movement or the formation of an East Turkistan.

## Location/Area of Operation

Xinjiang Province and neighboring countries in the region.

## External Aid

ETIM is suspected of having received training and financial assistance from al-Qaeda.


## 48.    First of October Antifascist Resistance Group (GRAPO)

### a.k.a. Grupo de Resistencia Anti-Fascista Primero de Octubre

### Description

Formed in 1975 as the armed wing of the illegal Communist Party of Spain during the Franco era.  Advocates the overthrow of the Spanish Government and its replacement with a Marxist-Leninist regime.  GRAPO is vehemently anti-US, seeks the removal of all US military forces from Spanish territory, and has conducted and attempted several attacks against US targets since 1977.  The group issued a communique following the 11 September attacks in the United States, expressing its satisfaction that "symbols of Primero de Octubre imperialist power" were decimated and affirming that "the war" has only just begun.

### Activities

GRAPO did not mount a successful terrorist attack in 2002.  GRAPO has killed more than 90 persons and injured more than 200.  The group's operations traditionally have been designed to cause material damage and gain publicity rather than inflict casualties, but the terrorists have conducted lethal bombings and close-range

PS 4 of 4

UNCLASSIFIED//~~FOUO~~

# Personal Representative Review of the Record of Proceedings

I acknowledge that on _30_ November 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #103.

_✓_ I have no comments.

____ My comments are attached.

▮▮▮▮▮▮▮▮▮▮▮, Major, USAF

_30 Nov 04_
Date

ISN #103
Enclosure (5)