IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| USAMA HASAN ABU KABIR, *et al.*, | ) ) ) |
| Petitioners, | ) ) |
| v. | ) ) Civil Action No. 05-CV-1704 (JR) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) ) |
| Respondents. | ) ) ) |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONERS'
MOTION FOR ORDER REQUIRING ACCESS TO CLIENTS AND
MOTION FOR ACCESS TO ALL CSRT AND ARB FINDINGS**

Respondents hereby oppose petitioners' motion for order requiring access to clients and motion for access to all Combatant Status Review Tribunal ("CSRT") and Administrative Review Board ("ARB") findings (dkt. no. 12) ("Mot. for Access").

As an initial matter, the relief requested by counsel for petitioners should not be granted pending the resolution of respondents' challenge to the "next friend" petitioner's standing to pursue this litigation. See Respondents' Motion for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing, or, in the Alternative, to Stay Proceedings Pending Related Appeals (dkt. no. 4). As demonstrated in respondents' motion, petitioner has not established that he possesses proper "next friend" standing under the two-pronged standard articulated by the Supreme Court in Whitmore v. Arkansas, 495 U.S. 149, 163-64 (1990). See id. at 5-13. Absent proper standing to sue, this case should be dismissed for lack of jurisdiction. Thus, given that the legitimacy of this lawsuit remains in question, the Court

should deny counsel's request for access to classified and other information regarding petitioners, and to visit petitioners at Guantanamo Bay.[1]

If the Court determines that petitioner has established proper standing to sue, this case nonetheless should be stayed pending resolution of all appeals in Khalid v. Bush, Boumediene v. Bush, Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), appeals docketed, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2005), appeal on petition for interlocutory appeal, No. 05-5064 (D.C. Cir. Mar. 10, 2005). See Respondents' Motion for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing, or, in the Alternative, to Stay Proceedings Pending Related Appeals (dkt. no. 4) at 15-21. The pending appeals will address the core issues in this case, including whether petitioners have stated valid claims under the Fifth Amendment to the United States Constitution and, if so, whether the procedures implemented by respondents to determine the status of petitioners as enemy combatants, about which petitioners' counsel complains, violate their Fifth Amendment

---

[1] Counsel for petitioners has not yet been issued a security clearance, which is a prerequisite for access to classified information and travel to Guantanamo Bay. To the extent that counsel is requesting expedited processing of a security clearance in order to access the classified portions of the factual returns and facilitate visits with petitioners, not only are such access and visits inappropriate until the threshold standing issue is resolved, but respondents have no control over the timing of security clearance applications. Processing of security clearances for petitioners' counsel is handled by the offices of the Department of Justice, Litigation Security Division (i.e., the Court Security Officers), who process all applications for petitioners' counsel in the Guantanamo litigation in an expedited fashion. This process take time, however, given the large number of petitioners' counsel who have applied for security clearances across the more than 155 pending Guantanamo habeas cases and the burdens associated with the application process, including substantive background investigations.

rights.[2]  Thus, the pending appeals will determine how this case should proceed, and whether factual returns[3] should be required, if at all.  Further proceedings, including providing counsel access to classified versions of the factual returns, would require the expenditure of significant judicial and other resources that may be avoided as a result of the appeals, and, in any event, such proceedings very likely would have to be revisited or relitigated once the appeals are decided and the Court of Appeals provides guidance regarding handling of the claims in all of the Guantanamo detainee cases.  Even if counsel had access to classified versions of the factual returns, they would not be able to share classified information in the returns with petitioners.  See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004), ¶ 30.  Thus, there is no reason why counsel need access to classified versions of the factual returns at this time.[4]

Moreover, the submission to counsel of classified versions of the factual returns which, in any event, may ultimately be unnecessary, burdens the government's resources and risks the inadvertent disclosure of classified information.  Although public and *in camera* versions of the records of proceedings before the CSRT pertaining to petitioners have already been submitted in

---

[2] See Pets' Mem. in Support of Mot. for Access at 9 (complaining about CSRT process).

[3] A factual return for a petitioner in a Guantanamo detainee case typically has consisted of the record of proceedings before the CSRT that confirmed petitioner's status as an enemy combatant properly subject to detention.  The factual return is separate from briefing on legal issues in the cases.  Factual returns include both classified and unclassified material.

[4] In this vein, various Judges of this Court have declined to require factual returns during the pendency of the stay.  See, e.g., Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 5); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6); Attash v. Bush, No. 05-CV-1592 (RCL) (dkt. no. 12).

this case, see Respondents' Response to Order to Show Cause and Notice of *In Camera* Submission Under Seal (dkt. no. 9), these records must also be reviewed by agencies who provided source information to the Department of Defense to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations and Executive Orders. Respondents must then prepare classified versions of the factual returns for submission to the Court and counsel.[5] Each return can range from dozens to hundreds of pages, depending upon the circumstances. Thus, respondents face an immense logistical burden to process and file the returns, especially on the short, simultaneous schedules being requested by petitioners in the various cases. Further, submission of these returns expands access to classified information contained in the returns, thereby increasing the risks of inadvertent or other disclosure or compromise of the information. These burdens and risks, however, could be rendered completely unnecessary, depending on the outcome of the appeals. Cf. Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 482 (staying cases so as to avoid expenditure of "substantial resources" and imposition of "significant burdens" that might not be necessary depending on outcome of appeal).

---

[5] Both of these versions would contain highlighting, explained therein, consistent with the Court's Order for Specific Disclosures Relating to Respondents' Motion to Designate as "Protected Information" Unclassified Information and Petitioners' Motion for Access to Unredacted Factual Returns, entered on December 8, 2004 by Judge Green in the coordinated cases. The records of CSRT proceedings pertaining to petitioners that were submitted to the Court for *in camera* review in response to the Court's Order to Show Cause (dkt. no. 9) did not contain highlighting. Thus, if the Court required respondents to make classified versions of the factual returns available to counsel, respondents would resubmit the records of CSRT proceedings to the Court for *in camera* review with highlighting, as appropriate.

Although certain Judges of this Court have ordered respondents to permit counsel access to factual returns in cases that are otherwise stayed, respondents oppose such access in the above-captioned case for the reasons stated herein. If the petition is not dismissed for lack of proper next friend standing, and submission of factual returns were to go forward at all, however, it could only be done pursuant to a coordinated and reasonable schedule, taking account of the fact that petitioners in all the recently filed cases are seeking factual returns and recognizing the logistical burdens posed by an undertaking to produce returns in the cases. In such circumstances, a schedule for the rolling production of factual returns in this case (and potentially other cases) over the next 10 to 12 weeks would be appropriate. In a number of other recent cases, the government has been given between 90 and 120 days to prepare and submit factual returns, and respondents request that the Court impose a similar schedule, if the Court determines that jurisdiction exists in this case and that classified factual returns should be made available to counsel who have been issued the appropriate security clearances. See e.g., Al-Joudi, No. 05-CV-0301 (GK) (dkt. no. 26) (imposing 90-day schedule); Al-Wazan, No. 05-CV-0329 (PLF) (dkt. no. 37) (imposing 90-day schedule); Al-Anazi, No. 05-CV-0345 (JDB) (dkt. no. 21) (imposing 120-day schedule); Ameziane, No. 05-CV-392 (ESH) (dkt. no. 12) (imposing 90-day schedule); Qayed, No. 05-CV-0454 (RMU) (dkt. no. 5) (imposing 90-day schedule); Battayav, No. 05-CV-0714 (RBW) (dkt. no. 12) (imposing 120-day schedule).

In any event, however, even if the Court determines that the next friend petitioner has standing to sue and that counsel access to factual returns is appropriate, petitioners' request for access to the records of ARB proceedings pertaining to petitioners should be denied. Although counsel for petitioners appears to conflate the function of the ARB proceedings with the function

of the CSRT proceedings,[6] the ARB proceedings are separate and distinct from CSRT proceedings, and the purpose of the ARB proceedings is distinct from the issue involved in petitioners' habeas claims. The habeas petition concerns whether petitioners are properly subject to continued detention by the United States, that is, whether petitioners have been legitimately determined to be enemy combatants and, thus, may be detained for the duration of hostilities. The ARB proceedings, on the other hand, are designed to assess, on an annual basis, not whether a detainee may be detained as an enemy combatant, but whether it is in the interests of the United States to transfer or continue to detain individuals already determined by CSRTs to be enemy combatants.[7] This decision is based on a weighing and balancing of factors, such as the threat a

---

[6] Counsel's belief that "at least one of these Petitioners – and likely both – would have been classified as non-enemy combatants, but for the fact that at the time the Tribunal believed that such a classification would result in automatic rendition to China," see Pets' Mem. in Support of Mot. for Access at 9, is pure, improper speculation. The CSRT panels reviewing petitioners' status unanimously determined that petitioners were properly classified as enemy combatants because they were affiliated with forces engaged in hostilities against the United States and its coalition partners. See Respondents' Response to Order to Show Cause and Notice of In Camera Submission Under Seal (dkt. no. 9), Exs. A, B. Accordingly, petitioners are lawfully subject to detention pursuant to the President's power as Commander in Chief or otherwise, and are being detained. Whether the CSRT also "urges favorable consideration for release of the Detainee" and "urges that he not be forcibly returned to the People's Republic of China," see Pets' Mem. in Support of Mot. for Access at 9, has no bearing on the CSRT's determination of enemy combatant status. Further, counsel's allegation that these statements constitute "classified information inadvertently quoted in the unclassified returns," see id. at 2, is incorrect. Although these statements originated in the Classified Summary of Basis of Tribunal Decision for petitioner Bahtiyar Mahnut (named in the petition as Sadar Doe), they are not classified and were incorrectly marked as classified in that document, and were properly made part of the unclassified version of the factual return filed on the public record. See Respondents' Response to Order to Show Cause and Notice of In Camera Submission Under Seal (dkt. no. 9), Ex. A.

[7] If the ARB recommends that continued detention of an enemy combatant by the United States is no longer warranted, the United States will seek to transfer such individual only to a country willing to accept him where it is not more likely than not that he would be tortured. See generally Declaration of Pierre-Richard Prosper dated Mar. 8, 2005 (attached hereto as Exhibit

detainee is believed to pose to the United States or its allies in the ongoing armed conflicts against al Qaeda and its supporters, and the detainee's continuing intelligence value. See Memorandum Implementing Administrative Review of the Detention of Enemy Combatants (Sept. 14, 2004) (available at <<http://www.defenselink.mil/news/Sep2004/d20040914adminreview.pdf>>).  As a result, the ARB issues and the habeas issues are not the same; indeed, the ARB determination involves a complex weighing of factors and exercise of discretion by the Military that is not justiciable.[8]  See, e.g., Dist. No. 1, Pacific Coast Dist., Marine Engs. Beneficial Ass'n v. Maritime Admin., 215 F.3d 37, 42 (D.C. Cir. 2000) (finding that Executive's "judgments on questions of foreign policy and national interest . . . are not

---

A); Declaration of Matthew C. Waxman dated June 2, 2005 (attached hereto as Exhibit B).

[8] Thus, petitioners' request for access to ARB findings is essentially an improper attempt to take discovery.  A petitioner in a habeas case is not entitled to discovery as a matter of right, but rather must first demonstrate good cause to conduct discovery and obtain court permission. See, e.g., Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999) (explaining that "[a] habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant," and that "discovery is available only in the discretion of the court and for good cause shown."); Al Odah v. United States, 329 F. Supp. 2d 106, 107-08 (D.D.C. 2004) (finding that Guantanamo detainee habeas petitioners must first seek leave of court before conducting discovery and denying leave to conduct discovery).  Petitioners have not requested leave of court to take discovery, and the Court should not permit them to evade this requirement simply by filing a motion to compel production of the requested information.  Further, discovery is particularly inappropriate at this stage of the case when a jurisdictional challenge is pending and the case otherwise should be stayed pending related appeals, see supra at 1-5, and, in any event, it should be particularly disfavored in a case like this, where petitioners challenge an action of the military taken in the prosecution of a war.  See Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2652 (2004) (plurality opinion) (adjuring lower courts generally to "proceed with the caution that . . . is necessary" and to take only "prudent and incremental" steps when faced with novel issues pertaining to petitions for writs of habeas corpus from detainees involved in the current war on terror).

subjects fit for judicial involvement").[9] Thus, even if proper jurisdiction over this case is established, and even if the Court requires counsel access to classified versions of the factual returns, the Court should not grant counsel access to the records of the ARB proceedings for petitioners.

\*\*\*

For the reasons stated, petitioners' motion for access to clients and motion for access to all CSRT and ARB findings should be denied.

Dated:  October 13, 2005                                Respectfully submitted,

                                                                   PETER D. KEISLER
                                                                   Assistant Attorney General

                                                                  KENNETH L. WAINSTEIN
                                                                  United States Attorney

                                                                  DOUGLAS N. LETTER
                                                                  Terrorism Litigation Counsel

---

[9] Indeed, the D.C. Circuit has specifically held that the Executive Branch's determination regarding the existence of a national security risk is not justiciable. See People's Mojahedin Org. of Iran v. United States Dep't of State, 182 F.3d 17, 23 (D.C. Cir. 1999) (determination by the Secretary of State that "'the terrorist activity of the organization threatens the security of United States nationals or the national security of the United States'" was "nonjusticiable."). Thus, the balancing of national security risk and needs involved in a determination concerning the appropriateness of the continued detention of an enemy combatant is a matter entirely inappropriate for judicial review. See Industria Panificadora, S.A. v. United States, 763 F. Supp. 1154, 1160 (D.D.C. 1991) ("[D]ecisions which affect our national security involve policy decisions beyond the scope of judicial expertise. 'To attempt to decide such a matter without the necessary expertise and in the absence of judicially manageable standards would be to entangle the court in matters constitutionally given to the executive branch.'" (citation omitted)), aff'd on other grounds, 957 F.2d 886 (D.C. Cir. 1992). See also Almurbati v. Bush, No. 04-CV-1227 (RBW), 366 F. Supp. 2d 72, 75 (D.D.C. 2005) ("[I]n deference to the Executive Branch, courts are reluctant to intrude upon the discretionary authority of the Executive in military and national security matters.") (citing Hamdi v. Rumsfeld, 542 U.S. 507, 124 S. Ct. 2633, 2647 (2004); Dep't of Navy v. Egan, 484 U.S. 518, 530 (1988)).

    /s/ Preeya M. Noronha
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
EDWARD H. WHITE
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Rm. 7144
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents