IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SADAR DOE, *et al.*, | ) ) ) |  |
| Petitioners | ) ) | Civil Action No. 05-CV-1704 (JR) |
| v. | ) ) |  |
| GEORGE W. BUSH, *et al.*, | ) ) |  |
| Respondents. | ) ) |  |

**PETITIONERS' MEMORANDUM SHOWING CAUSE WHY
PETITION FOR WRIT OF HABEAS CORPUS SHOULD NOT BE DISMISSED
<u>FOR LACK OF NEXT FRIEND STANDING</u>**

Sadar Doe and Arkeen Doe ("Petitioners") are two Chinese Uighur detainees – brothers – held by the United States Government at Guantanamo Bay Naval Station ("Guantanamo Bay"). They have challenged their detention by filing petitions for habeas corpus on their own behalf and through their Next Friend, Usama Hasan Abu Kabir, also a prisoner at Guantanamo Bay.

Respondents have filed a Motion to Show Cause why the Petition for habeas corpus should not be dismissed for lack of proper "Next Friend" standing, or, in the alternative, an order to stay the proceedings pending related appeals ("Show Cause Motion"). The Court (Oberdorfer, J.) issued an Order to Show Cause on November 4, 2005. Petitioners, through their undersigned counsel, submit this memorandum demonstrating that the petition for habeas corpus should not be dismissed, and that no stay should enter to the extent that it would not permit counsel to travel to Guantanamo Bay and confer with Petitioners.

The Supreme Court has held that Guantanamo Bay detainees are entitled to *habeas corpus* review by U.S. District Courts. Standing exists in this case because: i) Petitioners

have alleged sufficient facts to make a prima facie case that there is standing; ii) Respondents' have severely impeded access to attorneys and this Court; iii) Petitioners have satisfied the *Whitmore* standards; and iv) Respondents' own conduct provides cause for the Court to excuse any alleged defects in the Next Friend jurisdiction. All of which requires an order that Respondents allow counsel to consult with Petitioners and the Next Friend, in accordance with the Amended Protective Order entered in this matter.

**ARGUMENT**

    **A.**    **The Supreme Court has ruled that Petitioners have the right to file habeas petitions with the advice and assistance of counsel**

The United States Supreme Court has unequivocally stated that the federal habeas statute "confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base." *Rasul v. Bush*, ___U.S. ___, 124 S.Ct. 2686, 2698 ((2004)(plurality opinion, O'Connor, J.) In rejecting the Government's post-*Rasul* argument that detainees have no right to counsel, District Court Judge Kollar-Kotelly recognized that "the Supreme Court has found that Petitioners have the right to bring their claims before this Court, and the Court finds that ***Petitioners cannot be expected to exercise this right without the assistance of counsel***." *Al Odah v. United States*, 346 F. Supp 2d 1,8(D.D.C. 2004)(emphasis added). As the Judge explained:

> The detainees have been virtually incommunicado for nearly three years without being charged with any crime. To say that Petitioners' ability to investigate the circumstances surrounding their capture is 'seriously impaired' is an understatement. The circumstances of their confinement render their ability to investigate nonexistent. Furthermore, it is simply impossible to expect petitioners to grapple with the complexities of a foreign legal system and present their claims to this Court without legal representation. Petitioners face an obvious language barrier, have no access to a law library and almost certainly lack a working knowledge of the American legal system." *Id*. (quoting *Battle v. Armontrout*, 902 F.2d 701, 702 (8th Cir. 1990).

2

**B.     The special circumstances of Petitioners' confinement and their separate ethnic status seriously impair their access to this Court and bolster the necessity of recognizing Petitioners' Next Friend as legitimate**

Uighurs are a Turkic Muslim minority group that has been, and continues to be, brutally oppressed by the communist Chinese government. *See* U.S. DEP'T OF STATE, COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES – 2004 (2/28/05), *at* http://www.state.gov/g/drl/rls/hrrpt/2004/41640.htm. Respondents have admitted that many – *if not most* – of these Uighur detainees have been determined to be "No Longer Enemy Combatants," (even though they never have been enemy combatants) or otherwise eligible for release. *See, e.g.,* The Washington Post, August 24, 2005 (US Government has been attempting since 2003 to find a country that will take the Uighurs); interview with Colin Powell, Secretary of State, in Washington, D.C., at 5 (Aug. 12, 2004) ("[T]he Uighurs are a difficult problem and we are trying to resolve all issues with respect to all detainees at Guantánamo. The Uighurs are not going back to China, but finding places for them is not a simple matter, but we are trying to find places for them."). Yet the Uighurs languish in prison at Guantánamo, and the Government continues to assert its authority detain the Uighurs for "as long as it takes." [1]

Unclassified portions of documents provided to counsel pursuant to Order of the Court (Robertson, J.) demonstrate that at least one of the Petitioners – and likely both – were recommended as eligible for release, and that they should not be sent back to China. Sadly, these Petitioners, and

---

[1] *See, also, e.g.*, Demetri Sevastopulo, "Cheney backs Guantanamo Bay jail amid growing unease," FINANCIAL TIMES (June 13, 2005) ("The US is holding about 550 detainees at Guantanamo, including about a dozen Uighur Chinese whom the US has determined are no longer 'enemy combatants'."); Carol Rosenberg, "Guantanamo Bay: Closing prison would be tricky easy," MIAMI HERALD (June 12, 2005) ("Navy Secretary Gordon England confirmed in March that Guantanamo captives include Chinese Muslims—reportedly about two dozen—who are no longer classified as 'enemy combatants,' the Bush administration term for terrorism suspects."); Editorial, WASH. POST (May 3, 2005) ("[T]he military has determined that about 15 of [the Uighurs at Guantanamo Bay] are not 'enemy combatants.' . . . The Pentagon has, consequently, cleared them for release. The trouble is that the State Department has been unable to find other countries willing to take them.").

other Uighur detainees, are trapped in the middle of a diplomatic imbroglio between the United States and China, resulting in their continued confinement in a Guantanamo prison cell, unable to communicate with the outside world. Petitioners' circumstances are dire:

- They have been allowed no contact with family members or friends;

- They have had no criminal charges brought against them, even though they have been imprisoned for nearly four years;

- They have every reason to distrust their captors and interrogators;

- They have every reason to rely on other prisoners, such as their Next Friend, who has already secured counsel;

- Because Uighurs are a repressed minority in China, it is not possible for counsel to meet with family members, who are fearful of reprisals;

- It is not known whether Petitioners have access to pens and paper, or whether they are literate;

- They cannot communicate with their attorney, and, indeed, are not aware that one has been secured for them;

- They have no expectation of release, ever; and

- They have every reason to challenge their confinement.

Petitioners therefore have no choice but to proceed with this action through their Next Friend, until such time that counsel can meet with them to confirm their desire for representation. Rather than making the Petitioners available for interviews and eliminating any doubt that Petitioners wish to pursue these writs, the Government instead seeks the drastic remedy of dismissal, arguing that the Next Friend does not qualify under the standard of *Whitmore v. Arkansas*, 495 U.S. 149 (1990).

4

### C. Petitioners can meet, and have met, the *Whitmore* test

The *Whitmore* decision set forth a summary of the "next friend" standards to which lower courts have generally adhered. Such standing is not to be considered automatically granted. Rather:

> (d)ecisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for "next friend" standing. First a "next friend" must provide an adequate explanation – such as inaccessibility, mental incompetence, or other disability – why the real party in interest cannot appear on his own behalf to prosecute the action (citations omitted). Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate (citation omitted), and it has been suggested that a "next friend" must have some significant relationship with the real party in interest (citation omitted).

*Whitmore* at 163-164.

The principal theory of *Whitmore* underlying the two-pronged test, is that the "next friend" mechanism is meant to provide access to courts for those who are unable to seek relief themselves. It finds its way into the first prong as a requirement that the "next friend" explain why the party in interest suffers from inaccessibility.

Because of the onerous conditions set forth in Section B, above, it is obvious that counsel cannot, without further factual development, demonstrate conclusively that the situation of the Petitioners and their Next Friend, Usama Hasan Abu Kabir, is one envisioned under *Whitmore*. Nevertheless, a strong argument can be made that the very conditions that the Government has imposed on these Petitioners – their *inaccessibility* – creates an irrefutable presumption that they have met the standing requirements of *Whitmore*.

Mr. Kabir does not know the members of Petitioners' family or their friends in China, nor can he reach them. Even if he could, conditions in China create such fear of

5

reprisal that any communication would be hampered severely. Mr. Kabir does know that he himself has obtained an attorney and that if his friends cannot obtain one, they will continue to remain as inaccessible at Guantanamo as he has been for years.

The second *Whitmore* test, requiring that Mr. Kabir demonstrate his dedication to Petitioners' best interests, is established by Mr. Kabir's willingness to stick his neck out for his friends. On information and belief, prisoners have been punished for keeping lists with the names of fellow prisoners. His bravery cannot be underestimated as a testimony to his dedication. Counsel cannot add more to this attestation of friendship between Mr. Kabir and Petitioners because she cannot meet with him any more easily than she can meet with her own clients.

However, some additional facts are known and supplied by the Next Friend's attorney, Clive Stafford Smith. Mr. Smith is the founder of *Justice in Exile*, an organization dedicated to obtaining representation of prisoners at Guantanamo Bay. Mr. Smith represents Mr. Kabir, and obtained Petitioners' names through him. Mr. Smith's declaration, filed as Exhibit A to Petitioners' Memorandum in Opposition to Motion to Show Cause dated September 12, 2005 (Docket #7), outlines the horrifying steps that the Government is taking to keep the prisoners ignorant of the facts that would be necessary for them to make knowing, intelligent, and voluntary decisions concerning their causes.

While visiting at Guantanamo Bay, Mr. Smith determined that various of his clients wanted to act as next friends for other prisoners with whom they have become friendly while in the prison. Smith Declaration, ¶ 75. He states: "I have carefully instructed them on the legal meaning of next friend in the U.S. legal context and I have asked them to be sure that the prisoners for whom they act desire legal assistance." Mr. Kabir agreed to act as Next Friend of Petitioners.

Mr. Smith is well-known to the Government lawyers, having made tens of trips to Guantanamo Bay. On information and belief, the Government's lawyers specifically asked Mr. Smith, prior to his April 2005 visit, to gather information from his clients (including Usama Hasan Abu Kabir – the Next Friend in this case) regarding the Uighur detainees, including Petitioners. Given this explicit recognition that Next Friend Kabir (among others) is in a position to provide details about the Uighur detainees, it is supremely ironic that the Government now brings its challenge to the legitimacy of the Next Friend in this case.

As further demonstration that Petitioners desire counsel, one of the Petitioners in this case specifically raised the issue of court access during proceedings before the Combatant Status Review Tribunal ("CSRT"). According to the unclassified CSRT proceedings produced by Respondents, Petitioner Arkeen stated, basically, that he wanted a lawyer to present his case to "the US Court system or US Judges." He testified:

> I have no more comments [other than the written responses], that is good enough evidence, which my Personal Representative already presented. What I wanted to do was go to Afghanistan to look for my brothers. I wanted the US Court system or US Judges to determine my case, they have to come up with, if I am innocent or not. If I am guilty they should come up with my punishment or what ever I deserve to serve time, I will do that. Other wise do something faster to finish my case. I would like the results as soon as possible.

Summarized Unsworn Detainee Statement, Enclosure 3 at 2. Because Petitioner Arkeen did not know all of the evidence against him, he was not able to defend himself adequately at the CSRT hearings, and displays a distressing passivity. However, his statement demonstrates his fervent desire to obtain relief from the legal limbo in which he languishes, and his trust in the U.S. court system.

    **D.**    **Petitioners acted in accordance with Respondents' own procedures in securing a next friend to represent them**

The Declaration of Frank Sweigart, appended as Exhibit B to the Show Cause Motion, the Government provides details of "steps taken by the Department of Defense ("DoD") to notify the detainees . . . of their right to challenge the legality of their detention by filing *habeas corpus* petitions in federal Court." Sweigart Declaration, ¶ 2. The Sweigart Declaration admits that the written notification allegedly provided to all detainees "tells the detainees that they have the option of *asking a friend*, family member, or lawyer to file a petition on their behalf" – the very option that the Government is seeking to block in this case.

The Notice the Government allegedly provided reads in pertinent part: "You may ask a civilian judge to look at the lawfulness of your detention through a process called a *petition for a writ of habeas corpus.* You **may ask a friend** or family member or a lawyer to file such a petition with the court. If you do not have a lawyer or a family member **or a friend** who could file this petition for you, you may file your own petition." Exhibit A to Schweigart Declaration ("Smith Declaration. It is significant that the Notice does not explain what a petition for writ of habeas corpus is, let alone how they should go about obtaining a lawyer. Obviously, asking a friend, the first option offered by the Government, is the only route available to a detainee cut off from family and ignorant of the law.

In addition to contravening their advice to detainees such as Petitioners, Respondents' arguments contradict the position they have taken in other habeas corpus proceedings in this litigation. Respondents have explicitly acknowledged the propriety of the Next Friend standing of fellow detainees such as Mr. Kabir in the case of *John Does 1-570 v. Bush*, No. 05-CV 0313 (CKK)(D.D.C.) . In disputing the argument of the *Doe* petitioners that detainees had been denied access to the courts in that case, Respondents stated that the "vast majority of these detainees have filed petitions through other individuals acting as *legitimate next friends* – family members, an

8

attorney who already represented the detainee in pending military commission proceedings, and *fellow detainees.*" See, Motion to dismiss Petition for Writ of Habeas Corpus, or, in the Alternative, To Stay Proceedings Pending Related Appeals and Memorandum in Support at 15-16 (emphasis added).

Petitioners failure to file pro se should not be interpreted to mean that they do not want representation. Indeed, to the best of counsel's belief, no Uighur detainee has submitted a pro se petition. Petitioners have no family that they can freely contact in China. In that sense, Uighur detainees are in a materially different position than other detainees who have filed pro se petitions, Moreover, it is not reasonable to suppose that Petitioners, who speak no English, who may or may not be literate, who likely do not know what *habeas corpus* means, who have no familiarity with the American legal system, and who have no knowledge how to file a paper in Federal District Court, could possibly proceed pro se.

E.  **Habeas corpus proceedings must not be allowed to founder in a procedural morass**

Our government has never before done what it has allegedly done here: imprisoned people without charging them with any wrongdoing; held them in physical isolation; deliberately impeded their access to counsel; subjected them to physical abuse and other mistreatment; and refused even to disclose their identities to the outside world so that legal, humanitarian, and medical assistance could be provided. Now, even though counsel has been secured and petitions filed, the Government seeks to prevent this Court from knowing who these Petitioners are or allowing these cases to proceed.

If there are any concerns regarding Next Friend standing in this action, they are due to actions by Respondents, and should be excused. As the Supreme Court has repeatedly recognized, "[t]he writ of habeas corpus is the fundamental instrument for safeguarding individual freedom

against arbitrary and lawless state action. Harris v. Nelson, 394 U.S. 286, 290-91 (1969). For that reason, the Court has made clear, "a habeas corpus proceeding must not be allowed to founder in a 'procedural morass.'" Id. at 291-92 (quoting Price v. Johnston, 334 U.S. 266, 269 (1948)). It is for that reason as well, that "*[t]he scope and flexibility of the writ* – its capacity to reach all manner of illegal detention – *its ability to cut through barriers of form and procedural mazes – have always been emphasized and jealously guarded by courts* and lawmakers." Id. at 290-91 (emphasis added.) Accord, Hensley v. Municipal Court, 411 U.S. 345, 349-50 1973)(Habeas corpus is "not a static, narrow, formalistic remedy.")

The Government's challenge to the Next Friend should be recognized for what it is: a blatant attempt to sink this case by causing it to flounder in a procedural morass. The Governments' own conduct is grounds for the Court to "cut through barriers of form and procedural mazes" such as those raised by Respondents. The Motion to Dismiss should be denied as antithetical to the jurisprudential foundations of the Great Writ that have sustained it for 800 years as the "fundamental instrument for safeguarding individual freedom" against lawless state action.

  **F.**  **Counsel must be allowed to consult with clients as agreed in the Amended Protective Order**

The Government approvingly reports in the Show Cause Motion that the American Bar Association ("ABA") has "agreed to recruit volunteer counsel for pro se petitioners and other detainees who request assistance of counsel in filing a petition for writ of habeas corpus." Show Cause Motion, at 9; Schweigart Declaration, ¶ 7. It is hard to imagine that detainees will feel comfortable asking their jailers for a list of counsel "approved" by the Government, particularly when they already are represented through their Next Friend by willing pro bono counsel. It is even

10

harder to imagine that those who do not file pro se petitions prefer lifelong incarceration to representation by counsel.

Petitioners Sadar and Arkeen actually managed, against the odds set by the Government, to inform a friend that they desperately want and need counsel. The authorization by the Next Friend suffices as *prima facie* evidence of standing in accordance with the Notification that the Government says it provided to the detainees. If further information is needed to establish standing (and there is no reasonable basis for arguing that), then there is a simple solution. All the issues and concerns raised by the Respondents in their motion could be quickly and easily resolved by allowing counsel to go to Guantanamo Bay and confer with Petitioners, to determine whether or not they desire to pursue a writ of habeas corpus. If Petitioners desire to be represented, then counsel could obtain an appropriate authorization. If they do not wish to pursue legal remedies, or wish to proceed *pro se*, then counsel will immediately notify Respondents and the Court.

As Respondents have pointed out, Section III.C. of the Amended Protective Order and Procedures for Counsel Access to detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004) permits counsel two visits with a detainee to determine if the detainee desires representation. The negotiated Amended Protective Order has already entered in this case, and counsel has agreed in documents filed with the Court (Robertson, J.) that she will be bound by the Order. The entry of the Amended Protective Order, and the Order to produce the CSRT returns issued by Judge Robertson are indices that this case is properly before the Court,

      G.    **Respondents Motion to Stay should be Denied**

The Respondents have requested the Court to stay proceedings in this case pending resolution of related appeals. Petitioner is aware that the Court (Robertson, J.) has granted stays in

other cases pending before the Court. Petitioners oppose Respondents' request for stay to the extent that it would not permit counsel to travel to Guantanamo and otherwise confer with Petitioners in accordance with the Amended Protective Order issued in this action.

**CONCLUSION**

The Government must be stopped from this illegitimate attempt to obstruct Petitioners' access to the courts by challenging their Next Friend's status and denying meaningful contact between the Petitioners and their pro bono counsel.

Dated: November 18, 2005                         COUNSEL FOR PETITIONERS:


Of Counsel:

| | |
|---|---|
| Barbara Olshansky<br>Deputy Director<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>666 Broadway, 7th Floor<br>New York, NY 10012<br>Telephone:   (212) 614-6439 |     /s/<br>Elizabeth P. Gilson<br>CT 002480<br>383 Orange Street<br>New Haven, CT 06511<br>Telephone:   (203) 777-4050<br>Facsimile:   (203) 787-3259 |

## CERTIFICATION OF SERVICE

This is to certify that on this 18th day of November, 2005, a copy of the foregoing was served on the following, by prepaid priority mail to:

Preeya Noronha
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W. Rm. 7144
Washington, DC 20530

_____/s/_____
Elizabeth P. Gilson