**TAB 3**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ——————————————— | ) | |
| | ) | Civil Action Nos. |
| | ) | 02-CV-0299 (CKK), 02-CV-0828 (CKK), |
| | ) | 02-CV-1130 (CKK), 04-CV-1135 (ESH), |
| *In re* Guantanamo Detainee Cases | ) | 04-CV-1136 (JDB), 04-CV-1137 (RMC), |
| | ) | 04-CV-1142 (RJL), 04-CV-1144 (RWR), |
| | ) | 04-CV-1164 (RBW), 04-CV-1166 (RJL), |
| | ) | 04-CV-1194 (HHK), 04-CV-1227 (RBW), |
| | ) | 04-CV-1254 (HHK), 04-CV-1519 (JR) |
| ——————————————— | ) | |

**RESPONDENTS' RESPONSE TO NOVEMBER 1, 2004 ORDER SETTING DEADLINE
FOR SUBMISSIONS IN RESPONSE TO PETITIONER'S
MOTION FOR AN ORDER REQUIRING PARTIES TO ABIDE BY
PROPOSED PROCEDURES FOR COUNSEL ACCESS**

Pursuant to the Court's November 1, 2004 Order offering all parties in the Guantanamo

Bay habeas litigation the opportunity "to oppose, supplement, concur with, or otherwise

comment on the proposed procedures set forth in the Motion for an Order Requiring Parties to

Abide by Proposed Procedures for Counsel Access, filed on October 22, 2004 in Begg v. Bush,

04-CV-1137," respondents state that they are prepared to accept the "closed universe" approach

proposed by Judge Kollar-Kotelly in her October 20, 2004, Memorandum Opinion and Order in

Al Odah v. United States of America, et al., Civil Action No. 02-0828-CKK (dkt. no. 117), with

respect to all detainees other than the three detainees addressed in that Order.[1]  However,

respondents respectfully submit that the procedures proposed by counsel in Begg are in certain

respects inconsistent with Judge Kollar-Kotelly's proposal, and that, in other respects, they

---

[1] The government continues to review Judge Kollar-Kotelly's October 20 decision with
respect to the monitoring of the three detainees addressed in that Order, and has not decided
whether to seek modification of that ruling or additional review.  Nevertheless, as explained
above, the government has revised its counsel access procedures as they apply to other petitioners
in these cases consistent with Judge Kollar-Kotelly's opinion.

unduly interfere with military prerogatives.  Accordingly, respondents urge adoption of the

government's "Revised Procedures For Counsel Access To Detainees At The US Naval Base In

Guantanamo Bay, Cuba," submitted herewith.  See Exhibit 1 ("Government's Revised

Procedures").

        The government's revised procedures are a modified version of procedures proposed in

Begg ("Begg procedures").  Under the government's revised framework, habeas counsel and

detainees may correspond without any intervening review by the privilege team.  Petitioners'

counsel will be required to treat all information learned from a detainee, including any oral and

written communications with a detainee, as classified information, unless and until the

information is submitted to the privilege team and determined to be otherwise.  As explained

below, the government's revised procedures are consistent with the approach adopted by the

court in Al-Odah; indeed, the procedures modify aspects of the Begg procedures that are

inconsistent with Al-Odah.  The government's revised procedures also modify aspects of the

Begg procedures that unreasonably alter details of the current counsel access procedures that are

more appropriately left to the discretion of the government as administrator of Guantanamo Bay

("GTMO") or that unreasonably create unacceptable GTMO security or national security risks –

aspects of the procedures that were unaffected by the Al-Odah decision.[2]

-------------------------------------------------

        [2] Begg counsel assert that their proposed procedures merely "memorialize temporary
counsel access procedures currently in place" with respect to counsel's communications with
their clients in this case.  See Begg Motion at 4, 6, 16, 17-18.  No such ongoing temporary
arrangements with counsel exist in the Begg case.  Due to some confusion that arose with respect
to materials that were generated during Begg counsel's visit to GTMO, the first such visit by
habeas counsel in these cases, the government agreed not to subject that single package of
material to privilege team review pending a decision from Judge Kollar-Kotelly.  See September
24, 2004 Letter from Andrew Warden to Gitanjali Gutierrez (attached as Exhibit 2).  The
government, however, rejected counsel's subsequent request to adopt on an ongoing basis

For these reasons, as elaborated below, the Court should adopt the government's revised procedures and not the <u>Begg</u> procedures.

<u>**ARGUMENT**</u>

**I.    The <u>Begg</u> Procedures Do Not Comply With The Framework Adopted by Judge Kollar-Kotelly in <u>Al-Odah</u>.**

One significant reason the <u>Begg</u> procedures should not be adopted as proposed is that the procedures, though described by petitioners' counsel as consistent with those in Judge Kollar-Kotelly's October 20 Opinion and Order, <u>see</u> <u>Begg</u> Motion at 5-6, 22, in fact fail to include important aspects of the approach chartered by Judge Kollar-Kotelly. The government's revised procedures, by contrast, are consistent with Judge Kollar-Kotelly's approach. For example, one of the conditions Judge Kollar-Kotelly placed on counsel access was to prohibit counsel from sharing with the detainee any classified information learned from sources other than the detainee.[3] <u>See</u> <u>Al-Odah</u> Memorandum Opinion at 23. The government's procedures include this requirement, <u>see</u> Government's Revised Procedures at ¶ IX.D.; the <u>Begg</u> procedures intentionally do not, <u>see</u> <u>Begg</u> Motion at 20-21. In <u>Al Odah</u>, Judge Kollar-Kotelly also imposed an explicit requirement that petitioners' counsel disclose to the government any information learned from a detainee involving future events that may threaten national security or imminent violence. <u>See</u> <u>Al-Odah</u> Memorandum Opinion at 22. The government's proposed procedures similarly impose

procedures that diverted from the counsel access procedures applicable to all the habeas cases. <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> Transcript of October 13, 2004 Status Conference at 49, l.11-50, l.13 (excerpt attached as Exhibit 3).

[3] This aspect of Judge Kollar-Kotelly's opinion is consistent with the proposal of the government and certain petitioners with respect to the proposed protective order in this case. <u>See</u> Proposed Protective Order (<u>Begg</u> dkt. no. 29) ¶¶ 17, 29-30; Joint Report on Protective Order Issues (<u>Begg</u> dkt. no. 30).

-3-

such an obligation, see Government's Revised Procedures at ¶ IX.C.; the Begg procedures do not.[4]  In Al Odah, the Court precluded counsel from sharing classified information learned from the detainee with anyone except, perhaps, co-counsel with security clearances in the detainee's case.[5]  See Al-Odah Memorandum Opinion at 21, 23-24.[6]  The Begg procedures do not contain this prohibition; indeed, Begg counsel appear to reserve the issue of whether they, without the consent of the government, may share information being treated as classified with counsel in other pending habeas cases.  See Begg Motion at 20-21.

The inconsistency of the Begg counsel procedures with conditions imposed on counsel under Judge Kollar-Kotelly's decision warrants rejection of the Begg procedures in favor of the government's revised procedures, which are consistent with Judge Kollar-Kotelly's approach.

**II.    The Begg Procedures Would Create Unacceptable Risks To Security at GTMO And National Security.**

Respondents also oppose implementation of the Begg procedures because they improperly or inadequately modify existing counsel access rules that are necessary to ensure security at GTMO and to protect against threats to national security.  First, the Begg procedures

---

[4] While both the Begg procedures and the government's revised procedures permit the government to act upon any such information learned in the course of any permitted classification review by the government, see Begg Procedures at ¶ VII.F.; Government's Revised Procedures at ¶¶ VII.D. & E., the Begg procedures impose no affirmative obligation of disclosure of such information by counsel.

[5] Al-Odah petitioners have filed a motion for clarification that the October 20 Memorandum Opinion and Order permits counsel to share information learned from a detainee with other cleared counsel on the case.  See Al-Odah et al. v. United States of America et al., Civil Action No. 02-828-CKK (dkt. no. 134) (filed Nov. 3, 2004).

[6] The proposal of the government with respect to the proposed protective order in this case is consistent with this aspect of Judge Kollar-Kotelly's opinion.  See Proposed Protective Order (Begg dkt. no. 29) ¶ 29; Joint Report on Protective Order Issues (Begg dkt. no. 30) at 5-7.

provide that personnel at GTMO cannot open incoming mail to detainees.  See Begg Procedures at ¶ IV.2.  Such a restriction is unacceptable in light of concerns regarding the infusion of prohibited contraband into the secure environment at GTMO.  The government's procedures, in contrast, permit GTMO personnel to open incoming legal mail to search the contents for prohibited physical contraband.  However, GTMO personnel may not read or copy incoming legal mail as long as counsel adequately identifies the envelope or mailer as containing legal mail.  See Government's Revised Procedures at ¶ IV.A.3.  These procedures adequately protect both the government's interest in maintaining a secure facility at GTMO and petitioners' interest in safeguarding the confidentiality of attorney-client communications.  Consequently, the government's procedures, which are analogous to procedures adopted by the Bureau of Prisons, are reasonable and should be adopted without modification.  See 28 C.F.R. § 540.18; Henthorn v. Swinson, 955 F.2d 351, 353-54 (5th Cir. 1992) (upholding Bureau of Prisons mail regulations and procedures against constitutional challenge).

Second, in the event the privilege team, in performing a classification review requested by petitioners' counsel, discovers information that reasonably could be expected to result in immediate and substantial harm to the national security, the Begg procedures improperly require the privilege team to make reasonable efforts to contact habeas counsel *prior* to disseminating this information to law enforcement, military, or intelligence personnel.  See Begg Procedures at ¶ VII.F.  No such obligation should be imposed, however, both because the government's ability to protect national security should not be impaired and any communication that reasonably could result in future harm to the national security would not be protected by the attorney-client privilege.  See In re Sealed Case, 754 F.2d 395, 399 (D.C. Cir. 1985) ("Communications

otherwise protected by the attorney-client privilege are not protected if the communications are made in furtherance of a crime, fraud, or other misconduct."); Al-Odah Memorandum Opinion at 22-23.  The government's revised procedures, which do not contain a counsel notification requirement, should be upheld.  See Government's Revised Procedures at ¶¶ VII.E. & F.

Third, both the government's revised counsel access procedures, as well as those proposed by Begg counsel, properly include a prohibition on the sharing with detainees of information relating to current events and security matters not related to counsel's representation, including current political events; security arrangements; status of other detainees; and information relating to ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities.  See Begg Procedures at ¶ IV.A.5.;  Government's Revised Procedures at ¶¶ IV.A.7.; V.B.  The purpose of such a constraint is to preserve security and stability among the detainee population, the Guantanamo Bay facility, and those associated with the facility, without intruding upon information sharing that may be needed for purposes of appropriate representation of detainees in these cases.[7]

---

[7] As explained in the Declaration of Brigadier General Jay Hood, Commander, Joint Task Force Guantanamo Bay, Cuba, attached as Exhibit 4, permitting such restricted information into the detainee population could create risks to U.S. personnel and detainees, and could irreparably harm intelligence-gathering efforts.  See Ex. 4 ¶¶ 3–7.  For example, sharing the identities of security personnel or information concerning security procedures could create force protection issues and affect good order in the facility.  See id. ¶¶ 3-6.  Information concerning current political events or military activities could incite or cause unrest among detainees.  Id. ¶¶ 3-6.  Such information, if spread, might also be used by detainees to target other detainees for persecution or harm based on their nation's action.  Id. ¶ 6.  (An obvious example would be if detainees were informed that forces of a certain nation were conducting activities in the area surrounding a shrine or other place of interest to a detainee).  Restricted information, if passed to detainees, could also permit detainees to thwart interrogations or cause cooperating detainees to decline further cooperation, thereby harming the investigations or interrogations.  See id. ¶ 7.  Accordingly, the communication of these types of information, to the extent not strictly necessary to the habeas representation, must be foreclosed.  See id. ¶ 8.

In contrast to the Begg procedures, however, the government's revised procedures should be adopted by the Court because they provide counsel with specific information about the scope of the prohibition.  Because, under the government's revised procedures, the government will not be able to check incoming communications to detainees for such security-related information, a situation that obviously increases the risk of the introduction of such information to the detainee population, the government's revised procedures add specific examples of the types of information falling with the prohibition, so that counsel have a clearer understanding of what

Information liable to lead to such harms, as explained by General Hood, would include:

a.  The status of current political or military events.  This includes:  the progress and conduct of the war in Afghanistan, Iraq and other operations conducted during the Global War on Terrorism, election predictions and results, international disputes and the opinions of foreign governments or nongovernmental organizations;

b.  Historical perspective on jihadist activities.  This includes:  discussions of the Afghanistan jihad, jihadist movements in other countries, the demise or progress of extremist and terrorist groups, the presence and activities of foreign fighters in Iraq;

c.  Any information or mention of the fate, whereabouts or activities of any leaders of al Qaida, the Egyptian Islamic Jihad and other terrorist organizations comprising the al Qaida Associated Movement or their associations or affiliates;

d.  Information about allegations of abuse or mistreatment made by other detainees (including former detainees) at Guantanamo or other facilities;

e.  Information pertaining to assignment or reassignment of present and former detention personnel; and

f. Information regarding any plans for release or continued detention of detainees; changes, upgrades or additions to detention facilities; the operation of the detention facility or changes or enhancements to security procedures at Guantanamo.

Id. ¶ 5.

types of information-sharing would not be appropriate.  <u>See</u> Government's Revised Procedures at ¶¶ IV.A.7.; V.B.  The examples track the examples provided by General Hood.  <u>See</u> <u>supra</u> note 7. Similarly, the government's procedures, consistent with the concerns raised by such information and the judgment of General Hood that its disclosure to detainees be avoided in the absence of "strict[] and specific[] necess[ity]," <u>see</u> Ex. 4 ¶ 8, revise the caveat permitting the sharing of such types of information only when the information is "directly" related to the representation.  The potential threat to safety, security, and intelligence interests from the introduction of such information into the detainee population warrant these revisions to and clarifications of the prohibition, and should not interfere with communications necessary for litigation of these habeas cases.

**III.    The <u>Begg</u> Procedures Unreasonably Alter Details Of Existing Government Procedures Regarding Counsel Access to Detainees Held At GTMO, Details More Appropriately Reserved To The Judgment Of The Government Than To That Of Petitioners' Counsel.**

In addition to the matters described above, the <u>Begg</u> procedures unreasonably alter – frequently without any supporting explanation – many details of the government's counsel access procedures, details more appropriately reserved to the judgment of the government than to that of petitioners' counsel:

1.    The <u>Begg</u> procedures modify without explanation the paragraph addressing the applicability of the government's counsel access procedures.  <u>Compare</u> Begg Procedures at ¶ I, <u>with</u> Government's Revised Procedures at ¶ I.  The government previously determined that the counsel access procedures should not apply to counsel who are retained solely to assist in the defense of a detainee whom the President has determined to be subject to trial by military

-8-

commission.  This restriction is reasonable in light of the significant differences between habeas litigation in federal court and military commission proceedings.  Because petitioners offer no explanation for the changes to this paragraph, the government's revised procedures should be adopted in full.

2.      The Begg procedures also inexplicably remove the definition of the term "Detainee" from the government's existing provisions.  See Begg Procedures at ¶ II.  In place of the word "detainee," the Begg procedures consistently refer to the term "client," which is not appropriate give that most of these cases remain next-friend petitions and many counsel have yet to meet their detainee and obtain consent to the representation.  In contrast to the Begg procedures, the government's revised procedures contain a clear and concise definition of the terms "counsel" and "detainee" in order to provide all parties with notice of to their responsibilities and privileges under the procedures.  See Government's Revised Procedures at ¶ II.  Additionally, the Begg Procedures modify without explanation other definitions in paragraph II of the government's revised counsel access procedures, including the terms "communications," "counsel," and "privilege team."  The government's definitions are both reasonable and precise, thus they should be adopted by the Court without modification.

3.      The Begg procedures unreasonably limit the requirement relating to when counsel's staff sign an affirmation acknowledging their agreement to comply with the counsel access procedures.  See Begg Procedures at ¶ III.B.3.  In order to ensure that all staff members working on the GTMO cases comply with the counsel access procedures, the government's revised procedures provide that all staff must sign an affirmation upon utilization of those individuals by counsel in a fashion that implicates the counsel access procedures (e.g., the first time an

interpreter translates or transcribes information provided by a detainee). <u>See</u> Government's

Revised Procedures at ¶ III.B.3. This requirement ensures that counsel and support staff who

participate in the GTMO litigation will be aware of and abide by the governing counsel access

procedures.

   4. The government objects to the inclusion in the <u>Begg</u> Procedures of the requirement

that counsel for the government must sign an affirmation acknowledging their agreement to

comply with habeas counsel access procedures. <u>See</u> Begg Procedures at ¶¶ III.B.5-6. The

government's "Revised Procedures For Counsel Access To Detainees At The US Naval Base In

Guantanamo Bay, Cuba" are simply that: procedures that permit non-government counsel to

access detainees held at GTMO for the purpose of conducting habeas litigation. With the

exception of arranging the logistics of counsel visits, <u>see</u> Government's Revised Procedures at ¶

III.D, the government's revised procedures do not implicate government counsel. Moreover,

government counsel will not have any contact with individual detainees, nor will government

counsel be privy to privileged communications between habeas counsel and detainees. For these

reasons, any requirement that government counsel sign an affirmation agreeing to comply with

the GTMO counsel access procedures is unwarranted.[8]

---

  [8] Under the government's revised procedures, only the privilege team has access to
communications between counsel and detainees. Further, privilege team involvement is limited
only to situations in which counsel submits information to the privilege team for a classification
determination. <u>See</u> Government's Revised Procedures at ¶ VII. To protect against any potential
violations of the attorney-client privilege, the privilege team cannot be comprised of any
personnel who have taken part in, and, in the future, will not take par in, any government
personnel involved in court, military commission or enemy combatant status proceedings
involving the detainee. Additionally, the privilege team is prohibited from disclosing any
information except as permitted by the access procedures (<u>i.e.</u>, in cases of discovered threats to
national security or imminent violence, <u>see id.</u> at ¶ VII). <u>See id.</u> at ¶¶ II.D. & VII.

5.    Without any explanation, the <u>Begg</u> Procedures improperly remove the presumption that no more than one attorney and one interpreter should visit with a detainee at one time, without advance approval by the Commander, JTF-Guantanamo.  <u>Compare</u> <u>Begg</u> Procedures at ¶ III.D.2., <u>with</u> Government's Revised Procedures at ¶ III.D.2.  As a threshold matter, the Commander, JTF-Guantanamo to date has approved every request from habeas counsel for multiple attorneys to attend a meeting with a single detainee.  Nevertheless, given the limitations on facilities and meeting spaces at GTMO, the one attorney-one detainee presumption is reasonable and should be preserved.  It is important that all counsel visiting GTMO are accommodated in a safe manner and that personnel at GTMO have discretion with respect to meeting facilities used for habeas counsel visits.  For these reasons, the court should adopt the government's revised procedures with respect to the number of counsel presumptively permitted to meet with a single detainee.

6.    With respect to the logistics of arranging counsel visits to GTMO, the Court should adopt the government's revised procedures without modification based on government counsel's previous experience arranging visits for habeas counsel.  <u>See</u> Government's Revised Procedures at ¶ III.D.  The government's revised procedures provide the most efficient mechanism for distributing information to counsel and arranging logistical details of a visit.

7.    In contrast to the <u>Begg</u> procedures, the government's revised procedures contain more detailed labeling and document handling procedures to ensure that counsel, detainees, and GTMO personnel properly distinguish between legal mail and non-legal mail.  <u>See</u> Government's Revised Procedures at ¶¶ IV-VI.  These procedures generally provide that GTMO personnel will handle all incoming and outgoing legal mail as privileged, provided the exterior of the envelope

-11-

or mailer is clearly annotated and sent to the appropriate address.  See id.  Such labeling and

mailing requirements are similar to and expand on those previously adopted in the government's

supplemental mail procedures, and they can help prevent confusion and any inadvertent

misrouting or mishandling of information.

8.     The Begg procedures do not provide correct addresses where privileged mail and

documents may be sent.  See Begg Procedures at ¶¶ IV.A.1., IV.B.3., VI.B., VII.C.  Due to the

government's concerns about public dissemination of this information, which is intended solely

for legal communications between counsel and detainees, the government will provide all

counsel in the GTMO litigation with the proper addresses at a later date.  Non-legal

communications between detainees and persons other than counsel are addressed in paragraphs

IV.A.5. & IV.B.3. of the government's revised procedures.

9.     The Court should adopt the government's revised procedures regarding the

mechanics of obtaining from the privilege team classification determinations regarding

communications with a detainee.  Compare Government's Revised Procedures at ¶ VII, with

Begg Procedures at ¶ VII.  Although the Begg Procedures address many of the same topics, the

government's revised procedures are more complete and provide all parties with additional

details regarding their duties and responsibilities.[9]  For these reasons, the Court should adopt

paragraph VII of the government's revised procedures without modification.

10.     The Begg procedures also improperly modify the government's procedures

_____

[9] For example, the time guidelines for privilege team review suggested in the Begg
procedures are adopted in the government's revised procedures, except that the guidelines are
reasonably keyed to the privilege team's receipt of material to be reviewed to account for any
uncertainties in mail delivery.

regarding telephonic access to detainees.  More specifically, the <u>Begg</u> procedures attempt to regulate and limit any monitoring of telephone calls between detainees and persons other than counsel.  <u>See</u> <u>Begg</u> Procedures at ¶¶ VIII.C., D.  This requirement is unreasonable and improper because no privileged relationship exists between detainees and non-counsel.  The government's revised procedures properly note that monitoring of telephone calls between detainees and non-counsel may be conducted, as appropriate.  <u>See</u> Government's Revised Procedures at ¶ VIII.C.

11.    Finally, the Court should adopt paragraph X of the government's revised procedures as written because these provisions address base security procedures at GTMO, matters that fall more appropriately within the judgment of the government as opposed to petitioners' counsel.  <u>Compare</u> Government's Revised Procedures at ¶ X, <u>with</u> <u>Begg</u> Procedures at ¶ X.  For instance, the government's revised procedures explain the types of physical contraband prohibited at GTMO and the search policies of the base.  Any attempt by petitioners to modify GTMO's basic security procedures is wholly improper.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should adopt the government's revised procedures as uniform counsel access procedures in these cases.  <u>But</u> <u>see</u> <u>supra</u> note 2.


Dated: November 4, 2004                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                           KENNETH L. WAINSTEIN
                                           United States Attorney

                                           BRIAN D. BOYLE

Principal Deputy Associate Attorney General

DAVID B. SALMONS
Assistant to the Solicitor General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

ROBERT D. OKUN
Assistant United States Attorney
Chief, Special Proceedings Section

/S/ Andrew I. Warden
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
LISA A. OLSON
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ALAN S. MODLINGER
ROBERT J. KATERBERG
ANDREW I. WARDEN   (IN Bar No. 23840-49)
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7144
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents

-14-

# EXHIBIT 1

**REVISED PROCEDURES FOR COUNSEL ACCESS TO DETAINEES**
**AT THE US NAVAL BASE IN GUANTANAMO BAY, CUBA**

## I. Applicability

The following procedures shall govern access to all detainees in the control of the Department of Defense (DoD) at the US Naval Base in Guantanamo Bay, Cuba (GTMO) by counsel for purposes of habeas corpus litigation in federal court.

These procedures do not apply to counsel who are retained solely to assist in the defense of a detainee whom the President has determined to be subject to trial by military commission. Access by that counsel is covered by the Procedures for Monitoring Communications Between Detainees Subject to Trial by Military Commission and their Defense Counsel Pursuant to Military Commission Order No. 3.

## II. Definitions

A.  <u>Communications</u>:  All forms of communication between counsel and a detainee, including oral, written, electronic, or by any other means.

B.  <u>Counsel</u>:  An attorney who is employed or retained by or on behalf of a detainee for purposes of representing the detainee in habeas corpus or other litigation in federal court in the United States and who is admitted, either generally or pro hac vice, in the jurisdiction where the habeas petition or other litigation is pending.  Unless otherwise stated, "counsel" also includes co-counsel, interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation.  Neither the references herein to "counsel," nor any other part of these procedures reflect any determination about, or an acknowledgment of, an attorney-detainee relationship between counsel and the detainee.

C.  <u>Detainee</u>:  An individual detained by DoD as an enemy combatant at U.S. Naval Base, Guantanamo Bay, Cuba.

D.  <u>Privilege Team</u>:  A team comprised of one or more DoD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future, will not take part in, any court, military commission or combatant status tribunal proceedings concerning the detainee.  If required, the privilege team may include interpreters/translators, provided that such personnel meet these same criteria.

E.  <u>Legal Mail</u>:  Letters written by counsel that are related to the counsel's representation of the detainee, as well as privileged documents and publicly-filed legal documents relating to that representation.

**III.  Requirements for Access to and Communication with Detainees**

A.  <u>Security Clearance</u>:

    1.    Counsel must hold a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel).

    2.    Counsel who possess a valid security clearance shall provide, in writing, the date of their background investigation, the date such clearance was granted, the level of the clearance, and the agency who granted the clearance.  Access will be granted only after DoD verification of the security clearance.

    3.    Counsel who does not currently possess a Secret clearance will be required to submit to an application for clearance to the Department of Justice, Litigation Security Division.

B.  <u>Acknowledgment of and Compliance with Access Procedures</u>

    1.    Before being granted access to the detainee, counsel will receive a copy of these procedures.  To have access to the detainee, counsel must agree to comply fully with these procedures and must sign an affirmation acknowledging his/her agreement to comply with them.

    2.    This affirmation will not be considered an acknowledgment by counsel that the procedures are legally permissible.  Even if counsel elects to challenge these procedures, counsel may not knowingly disobey an obligation imposed by these procedures.

    3.    The DoD expects that counsel, counsel's staff, and anyone acting on the behalf of the attorney will fully abide by the requirements of this document.  Counsel is required to provide the DoD with signed affirmations from interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation, upon utilization of those individuals by counsel in a fashion that implicates these procedures.

    4.    Should counsel fail to comply with the procedures set forth in this document, access to or communication with the detainee will not be permitted.

C.  Verification of Representation

    1.    Prior to being permitted access to the detainee, counsel must provide DoD with a *Notification of Representation*. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. Furthermore, the counsel must provide sufficient details regarding the circumstances of his/her retention to demonstrate the counsel's authority or standing to bring a habeas or other federal court action on the detainee's behalf.

    2.    After meeting with the detainee, counsel must provide DoD with an *Acknowledgment of Representation*. This document must be signed by the detainee and must specifically state that the detainee is being represented in habeas or other federal litigation by counsel named in the Acknowledgment. This document shall be provided by DoD and shall be signed and submitted as soon as is practical.

    3.    If the counsel withdraws from representation of the detainee or if the representation is otherwise terminated, counsel is required to inform DoD immediately of that change in circumstances.

    4.    Counsel must provide DoD with a signed representation stating that (a) to the best of counsel's knowledge after reasonable inquiry, the source of funds to pay counsel any fees or reimbursement of expenses are not funded directly or indirectly by persons or entities the counsel believes are connected to terrorism or the product of terrorist activities, including "Specially Designated Global Terrorists," identified pursuant to Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) or Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995), and (b) counsel has complied with ABA Model Rule 1.8(f).

D.  Logistics of Counsel Visits

    1.    Counsel shall submit to the Department of Justice (DoJ) any request to meet with a detainee. This request shall specify date(s) of availability for the meeting, the desired duration of the meeting and the language that will be utilized during the meeting with the detainee. Reasonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting. However, the space and security measures at GTMO limit the number of counsel who may visit and the number of detainees who can be seen during the visit. Once the request has been approved, DoJ will contact counsel with the date and duration of the meeting.

2.   Legal visits shall take place in a room designated by JTF-Guantanamo. No more than one attorney and one interpreter/translator shall visit with a detainee at one time, unless approved in advance by the Commander, JTF-Guantanamo.

3.   Due to the mission and location of the US Naval Base at Guantanamo Bay, Cuba, certain logistical details will need to be coordinated by counsel prior to arrival. This includes arrangements for travel and lodging. Specific information regarding these issues will be provided by DoJ.

4.   In order to travel to GTMO, all counsel must have a country and theater clearance for that specific visit. In order to begin processing country and theater clearances, counsel must have confirmed flight information for travel to GTMO and a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel). Country and theater clearances require twenty (20) days to process. Accordingly, counsel shall provide DoD, through DoJ, with the required information no later than 20 days prior to the GTMO visit date, or as soon as a visit is scheduled. Requests for visits made inside of 20 days will not normally be granted.

## IV.  Procedures for Correspondence Between Counsel and Detainee

A.  <u>Mail Sent by Counsel to Detainee ("Incoming Mail")</u>

1.   Counsel shall send incoming legal mail to the following address for delivery to the detainee: **<<address to be provided by government counsel>>**. This address is reserved exclusively for incoming legal mail sent by counsel to the detainee. In the event mail is sent to this address by persons other than counsel or non-legal mail is sent to this address, it shall be processed in accordance with the standard operating procedures for detainee non-legal mail.

2.   The outside of the envelope or mailer for incoming legal mail shall be labeled clearly with the following annotation: "Attorney-Detainee Materials-For Mail Delivery to Detainee." Each envelope or mailer shall be labeled with the name of the detainee and shall include a return address for counsel sending the materials. Each page of legal mail shall be labeled "Attorney-Detainee Materials." No staples, paper clips or any non-paper items shall be included with the documents.

3.   Upon receiving legal mail from counsel for delivery to the detainee, personnel at GTMO may open the envelope or mailer to search the contents for prohibited physical contraband. Legal mail shall not be read or copied if counsel routes and adequately identifies the contents of the envelope or mailer as provided by paragraphs IV.A.1., 2. Incoming mail that does not comply with the terms of paragraphs IV.A.1., 2 may be reviewed by military personnel at GTMO under the standard operating procedures for detainee non-legal mail.

4.  Within two (2) business days of receipt of legal mail, personnel at GTMO shall deliver the envelope or mailer to the detainee. If counsel desires confirmation that the documents were delivered to the detainee, counsel is responsible for providing a stamped, self-addressed envelope for that purpose. The detainee shall be responsible for mailing any confirmation of delivery to counsel as outgoing legal mail. This method shall be the sole and exclusive means by which confirmation of delivery is provided to counsel.

5.  Written correspondence to a detainee not falling within the definition of legal mail shall be sent through the United States Postal Service to the following address: **<<address to be provided by government counsel>>**. Non-legal mail includes, but is not limited to, letters from persons other than counsel, including family and friends of the detainee. These non-privileged communications will be reviewed by military personnel at GTMO under the standard operating procedures for detainee non-legal mail.

6.  Counsel is required to treat all information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise. Accordingly, if a counsel's correspondence contains any summary or recitation of or reference to a communication with a detainee that has not been previously determined to be unclassified, the correspondence shall be prepared, marked, transported and handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information and Security Supplement to DOD Regulation 5200.1R.

7.  Written and oral communications with a detainee, including all incoming legal mail, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation. Information falling within this prohibition includes, without limitation, the following, to the extent not directly related to counsel's representation of the detainee: (a) discussion of current political or military events, including the progress and conduct of the war in Afghanistan, Iraq and other operations conducted during the Global War on Terrorism, election predictions and results, international disputes and the opinions of foreign governments or nongovernmental organizations; (b) discussion of historical perspective on jihadist activities, including discussions of the Afghanistan jihad, jihadist movements in other countries, the demise or progress of extremist and terrorist groups, the presence and activities of foreign fighters in Iraq; (c) discussion or mention of the fate, whereabouts or activities of any leaders of al Qaida, the Egyptian Islamic Jihad and other terrorist organizations

comprising the al Qaida Associated Movement or their associations or affiliates; (d) discussion about allegations of abuse or mistreatment made by other detainees (including former detainees) at GTMO or other facilities; (e) discussion pertaining to assignment or reassignment of present and former detention personnel; and (f) discussion regarding any plans for release or continued detention of detainees; changes, upgrades or additions to detention facilities; the operation of the detention facility or changes or enhancements to security procedures at GTMO.

B.  Mail Sent by Detainee to Counsel ("Outgoing Mail")

1.  Detainees will be provided with paper to prepare communications to counsel. In the presence of military personnel, the detainee will seal the written communication into an envelope and it will be annotated as "Attorney-Detainee Materials-For Mail Delivery To Counsel." Each envelope shall be labeled with the name of the detainee and the counsel. Envelopes annotated with the name of persons other the detainee's counsel (including family/friends or other attorneys) shall be processed according to the standard operating procedures for detainee non-legal mail.

2.  After the outgoing legal mail is collected from the detainee, the envelope will be sealed into a larger envelope by military personnel at Guantanamo which will be marked as "Attorney-Detainee Materials-For Mail Delivery To Counsel" and will be annotated with the name of the detainee and the counsel. The envelope will be sealed and mailed in the manner required for classified materials. Within two (2) business days of receipt from the detainee, the communication will be mailed to the following address:  **<<address to be provided by government counsel>>**.

3.  Detainees also are permitted to send non-legal mail, including written communications to persons other than counsel, through the United States Postal Service. These communications shall be reviewed by military personnel at Guantanamo under the standard operating procedures for detainee non-legal mail.

4.  In the event any non-legal correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) are sent to counsel as, or included with, legal mail, counsel shall return the documents to military personnel at GTMO for processing according to the standard operating procedures for detainee non-legal mail.

**V.  Materials Brought Into A Meeting With Detainee And Counsel**

A.  Counsel shall bring only legal mail, writing utensils and paper into any meeting with a detainee unless counsel has received prior approval from the Commander, JTF-GTMO.

B.    Written and oral communications with a detainee, including all documents brought into a meeting with a detainee, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation. Information falling within this prohibition includes, without limitation, the following, to the extent not directly related to counsel's representation of the detainee: (a) discussion of current political or military events, including the progress and conduct of the war in Afghanistan, Iraq and other operations conducted during the Global War on Terrorism, election predictions and results, international disputes and the opinions of foreign governments or nongovernmental organizations; (b) discussion of historical perspective on jihadist activities, including discussions of the Afghanistan jihad, jihadist movements in other countries, the demise or progress of extremist and terrorist groups, the presence and activities of foreign fighters in Iraq; (c) discussion or mention of the fate, whereabouts or activities of any leaders of al Qaida, the Egyptian Islamic Jihad and other terrorist organizations comprising the al Qaida Associated Movement or their associations or affiliates; (d) discussion about allegations of abuse or mistreatment made by other detainees (including former detainees) at GTMO or other facilities; (e) discussion pertaining to assignment or reassignment of present and former detention personnel; and (f) discussion regarding any plans for release or continued detention of detainees; changes, upgrades or additions to detention facilities; the operation of the detention facility or changes or enhancements to security procedures at GTMO.

## VI. Materials Brought Out Of A Meeting With Detainee and Counsel

A.    Upon the completion of each meeting with a detainee or during any break in a meeting session, counsel will give the notes or documents used or produced during the meeting to a designated individual at Guantanamo. These materials will be sealed in the presence of counsel and will be handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.

B.    Upon the completion of the counsel's visit to Guantanamo, the notes or documents used or produced during the visit will be sealed in the presence of counsel and placed in an envelope labeled as "Attorney-Detainee Meeting Documents–For Delivery to Counsel." The envelope will be sealed into a larger envelope by military personnel at Guantanamo which will be marked as "Attorney-Detainee Meeting Documents-For Mail Delivery To Counsel" and will be annotated with the name of the detainee and the counsel. The envelope will be sealed and mailed in the manner required for classified materials. Within two (2)

business days following the completion of the counsel's visit to Guantanamo, the package will be mailed to the following address: **<<address to be provided by government counsel>>**.

C.   Correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) shall not be handled through this process. If a detainee provides these communications to his counsel during a visit, counsel shall give those communications to military personnel at Guantanamo so they can be processed under the standard operating procedures for detainee non-legal mail.

## VII. Classification Determination of Detainee Communications

A.   Counsel may submit information learned from a detainee to the privilege team for a determination of its appropriate security classification. Counsel shall memorialize the information submitted for classification review into a written memorandum outlining as specifically as possible the information for which counsel requests a classification determination. All documents submitted for classification review shall be prepared, handled and treated in the manner required for classified materials, as provided by as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.

B.   Counsel shall send all materials submitted for classification review to the following address: **<<address to be provided by government counsel>>**. The outside of the envelope or mailer shall be clearly labeled "Attorney-Detainee Meeting Documents-For Classification Review By Privilege Team." Each envelope or mailer will be annotated with the name of the detainee and the counsel. Each page of the document submitted for classification review shall be marked "Attorney-Detainee Materials" and "Classified." The envelope or mailer will be sealed and mailed in the manner required for classified materials.

C.   As soon as possible after conducting the classification review, the privilege team will advise counsel of the classification levels of the information contained in the materials submitted for review. The privilege team will forward its classification determination directly to counsel after a review and analysis period not to exceed, from the time of receipt by the privilege team:

  1. Ten (10) business days for information that is written in the English language;

  2. Twenty (20) business days for any information that includes writing in any language other than English, to allow for translations by the privilege team;

  3. Thirty (30) business days for any information where the privilege team has reason to believe that a code was used, to allow for further analysis.

D.    While conducting classification review, the privilege team will promptly report any information that reasonably could be expected to result in immediate and substantial harm to the national security to the Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials as appropriate.

E.    If, at any time, the privilege team determines that information in the documents submitted for classification review relate to imminent acts of violence, the privilege team shall report the contents of those documents to Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials.

F.    The privilege team shall not disclose any information submitted by counsel for classification review outside the privilege team, except as provided by these procedures or as permitted by counsel submitting the information.

## VIII.  Telephonic Access to Detainee

A.    Requests for telephonic access to the detainee by counsel or other persons will not normally be approved. Such requests may be considered on a case-by-case basis due to special circumstances and must be submitted to Commander, JTF-Guantanamo.

B.    Any telephonic access by counsel will be subject to appropriate security procedures, but shall not include contemporaneous monitoring or recording.

C.    Any telephonic access by persons other than counsel will be subject to appropriate security procedures, including contemporaneous monitoring and recording.

## IX.  Counsel's Handling And Dissemination Of Information From Detainee

A.    Subject to the terms of any applicable protective order, counsel may disseminate the unclassified contents of the detainee's communications for the purpose of preparing for or conducting litigation involving that detainee.

B.    Counsel is required to treat all information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise. All classified material must be handled, transported and stored in a secure manner, as provided by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.

C.      Counsel shall disclose to DoJ or Commander, JTF-Guantanamo any information learned from a detainee involving future events that threaten national security or involve imminent violence.

D.      Counsel may not divulge classified information not learned from the detainee to the detainee.  Counsel may not otherwise divulge classified information related to a detainee's case to anyone except those with the requisite security clearance and need to know, as determined by the government, using a secure means of communication.

## X.  JTF-Guantanamo Security Procedures

A.      Counsel and translators/interpreters shall comply with the following security procedures and force protection safeguards applicable to the US Naval Base in Guantanamo Bay, Cuba, JTF-Guantanamo and the personnel assigned to or visiting these locations, as well as any supplemental procedures implemented by JTF-Guantanamo personnel.

B.      Contraband is not permitted in JTF-Guantanamo and all visitors are subject to search upon arrival and departure.  Examples of contraband include, but are not limited to, weapons, chemicals, drugs, and materials that may be used in an escape attempt.  Contraband also includes money, stamps, cigarettes, writing instruments, etc.  No items of any kind may be provided to the detainee without the advance approval of the Commander, JTF-Guantanamo.

C.      Photography or recording of any type is prohibited without the prior approval of the Commander, JTF-Guantanamo.  No electronic communication devices are permitted.  All recording devices, cameras, pagers, cellular phones, PDAs, laptops, portable electronic devices and related equipment are prohibited in or near JTF-Guantanamo.  Should any of these devices be inadvertently taken into a prohibited area, the device must be surrendered to JTF-Guantanamo staff and purged of all information.

D.      Upon arrival at JTF-Guantanamo, security personnel will perform a contraband inspection of counsel and translators/interpreters using metal detectors as well as a physical inspection of counsel's bags and briefcases and, if determined necessary, a physical inspection of his/her person.  Security personnel may provide counsel with a briefing concerning the security measures at GTMO.  There will be restrictions on counsel's movement and activities during the visit.

E.      Counsel shall not be permitted to interview or question members of the Joint Task Force about their duties or interactions with detainees without first obtaining permission from the Commander, Joint Task Force Guantanamo.

F.    Counsel will meet with a detainee in conference facilities provided by GTMO. These facilities are subject to visual monitoring by closed circuit TV for safety and security reasons.  (The only other method of visual observation available is for the door to remain open with military police sitting outside the door.).  No oral communications between counsel and detainee will be heard.

G.    Counsel will only be permitted to meet with a detainee counsel represents in habeas corpus litigation in federal court in the United States.

H.    At the conclusion of a meeting with a detainee, counsel and translators/interpreters will again be inspected using a metal detector and, if deemed necessary, by physical inspection of their persons.