*Cleared with CSO for public filing*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SADAR DOE, *et al.*, <br><br> Petitioners <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> Respondents. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 05-CV-1704 (JR)(AK) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PETITIONERS' MEMORANDUM IN OPPOSITION
TO RESPONDENTS' MOTION FOR STAY
AND RECONSIDERATION OF ORDER COMPELLING COUNSEL ACCESS**

Sadar Doe (a/k/a Bahtiyar Mahnut) and Arkeen Doe (a/k/a Arkina Amahmud) ("Petitioners") are two Chinese Uighur detainees – brothers – held by the United States Government at Guantanamo Bay Naval Station ("Guantanamo Bay"). Petitioners hereby file their opposition to Respondents' Motion for Stay and Reconsideration of Magistrate Judge's May 11, 2006 Memorandum Order. ("Resps'' Motion")(Doct. 34).

**INTRODUCTION**

The original Petition for Habeas Corpus was filed in this action more than nine months ago, by and through Petitioners' Next Friend, Usama Abu Kabir. Since that time, the Government has waged a relentless, strenuous, campaign to block counsel from visiting, and even communicating with, the Petitioners. The Government has insisted that counsel cannot communicate with the prisoners because she has provided insufficient evidence of her authority to represent the detainees.

1

Counsel filed numerous motions, and on May 11, 2006, Magistrate Judge Kay granted Petitioners' motion to compel counsel access.("Order"). In a thoughtful, 13-page decision, Magistrate Judge Kay found that the plain language of the Protective Order[1] entered in this action on October 11, 2005 dictates that counsel is entitled to visit Petitioners at Guantanamo Bay to obtain the very authorization of representation that Respondents insist be provided prior to any visits.

The Protective Order was the result of painstaking negotiation by lawyers for Respondents and for several Guantanamo detainees.[2] It has served as the framework for the procedures governing counsel visits to Guantanamo since late 2004 and remains in use today. Magistrate Judge Kay specifically found that the Government's interpretation of the Protective Order "would require the Court to ignore the plain meaning of the text and to flaunt the most basic rules of construction." Order at 8. This finding is not clearly erroneous or contrary to law.

The Government has appealed.

**THE FACTS OF THIS CASE**

The facts of this case are set out in some detail in the Magistrate Judge's Order, pages 2-6. These factual findings may not be disturbed unless found to be clearly erroneous. FRCP 72. Moreover, Respondents do not contest these facts in their Motion.

---

[1] The "Protective Order" refers to the Amended Protective Order, Protected Information Order, and Supplemental Filing Procedures Order previously entered by Judge Joyce Hens Green in *Abdah v. Bush*, 04-CV-1254 (HHK) and the other coordinated Guantanamo Bay detainee cases.

[2] Respondents have never challenged the validity of the Protective Order, nor do they do so in their Motion.

**MAGISTRATE JUDGE KAY'S ORDER**

Petitioners' motions to compel counsel access presented Magistrate Judge Kay with a straightforward issue of interpretation of the Protective Order. The Protective Order is in the nature of a contract between counsel for detainees and counsel for the Respondents. No party has claimed that the order is ambiguous. It was Magistrate Judge Kay's responsibility, therefore, to construe the order from its plain language in light of the circumstances surrounding its entry. See *Geller v. Branic Intern. Realty Corp.*, 212 F.3d 734, 737 (2nd Cir. 2000) (applying contract construction principles to interpretation of protective order).

The dispute referred to Magistrate Judge Kay[3] posed the sole issue of the proper interpretation of a specific term: "evidence of [counsel's] authority to represent the detainee." The disputed term is found in two adjacent paragraphs of the Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba:

> C. Verification of Representation
>
> 1. Prior to being permitted access to detainee, counsel must provide DoD with a Notification of Representation. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. Additionally, counsel shall provide evidence of his or her authority to represent the detainee.
>
> 2. Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee. The Court recognizes that counsel may not be in a position to present such

---

[3] Petitioners' original Motion for Order Compelling Client Access (Dkt.31) was referred to Magistrate Judge Kay in accord with an Order entered in this case, and other cases, referring "all Motions pertaining to interpretation or construction of any protective order which has been entered . . . to Magistrate Judge Alan Kay pursuant to LCvR 72.2(a) Order, Nov. 2, 2005."

> evidence after the initial meeting with a detainee.  Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed.  Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

Respondents argued that the evidence of authority to represent the detainee (as set out in the last sentence of paragraph 1) must be provided "prior to being permitted access to detainee."  Magistrate Judge Kay rejected this argument.  He examined the language and concluded that only the "Notification of Representation" must be provided prior to being permitted access to detainee.  The timing of "evidence of authority" is governed by the second paragraph.

The "plain terms" of the second paragraph, according to Magistrate Judge Kay, "allow counsel a maximum of two visits with a detainee, plus ten days, before counsel must submit evidence of his or her authority to represent the detainee."  Order at 8.  Otherwise, the second paragraph is rendered meaningless.

Magistrate Judge Kay also rejected the Government's attempt to create a distinction between direct *habeas* petitions and those submitted through a next friend.  The Protective Order on its face refers to a single requirement of evidence of authority, and the "Court cannot infer a separate two-step requirement applicable solely to 'next friend' petitions out of thin air." Order at 8. In the context of the Guantanamo *habeas* cases:

> the legal fiction of a "next friend" became largely irrelevant except as a mechanism for identifying those detainees who seek to challenge their detention in the first instance. . . . In those *habeas* cases filed since the creation and entry of the Protective Order, the detainees who initiate a *habeas* petition on behalf of a fellow detainee generally do not seek to serve procedurally as a "next friend" in the traditional sense, but are

4

> simply passing on another detainee's request for help, a fact that can be confirmed once counsel meets directly with the detainee.
>
> Order at 8-9.

Moreover, the Magistrate Judge noted that "the record in this case shows that Petitioners have, in fact, provided substantial evidence that they genuinely wish to challenge their detention." Order at 9.

**ARGUMENT**

**A.     The Detainee Treatment Act is irrelevant to this action**

The Government seeks reconsideration of Magistrate Judge Kay's Order on grounds that he lacked jurisdiction to rule on the motion to compel client access by virtue of the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680. ("DTA").[4] Respondents previously raised this argument to Magistrate Judge Kay, who correctly noted that Petitioners' motion for an order compelling access to counsel was made to enforce the Protective Order, and did not implicate any of the jurisdictional questions currently pending in the D.C. Circuit and the Supreme Court. Order at 11. A Protective Order, he noted, "like any ongoing injunction, is always subject to the inherent power of the District Court. . . . It would be untenable for the District Court to be put in a position where it is powerless to enforce its own protective order, presently in effect and over which it has continuing control." Order at 12, internal citations omitted. Other judges considering this question agree. *See, e.g., Al Salami v. Bush*, Civil Action No. 05-2452 (PLF) (Order, April 13, 2006)( Central to the Protective Orders are their provisions for access to counsel.  Detainees' right to meet

---

[4]  The retroactive effect of the DTA was addressed in supplemental briefings in the Guantanamo habeas appeals pending before the D.C. Circuit and the Supreme Court.

with counsel under the Protective Order is independent of the (still-unresolved) question of the Court's jurisdiction to rule on their habeas petitions. Friedman, J.).

Even after the passage of the Act, counsel visits to Guantanamo have continued. The provisions of the Protective Order continue to be enforced and applied to the everyday issues of counsel access to detainees. Further, the Protective Order has been entered after the Act in numerous other detainee cases[5]. Clearly, this Court, the Government, and detainee counsel alike have embraced the continuing authority of the Protective Order. The continuing application of the Order requires compliance, interpretation, and, when necessary, enforcement of its terms by the court that issued it.

> **B.    The Magistrate Judge's interpretation of the Protective Order is neither clearly erroneous nor contrary to law.**

Respondents next argue that the Magistrate Judge's interpretation of the Protective Order is contrary to the language of the text, its history, and its context. Resps' Motion at 20 *et seq*. This argument has already been disposed of by another Judge considering a nearly-identical motion for reconsideration filed by the Government in another pending detainee case, *Adem v. Bush*, No. 05-723, slip op. (D.D.C. April 28, 2006)(RWR). In the *Adem* case, Magistrate Judge Kay first interpreted the "evidence of counsel authority" term, using the same reasoning as he did in the instant case. The Government's motion to reconsider was soundly rejected by Judge Richard Roberts. In an 18-page ruling upholding Magistrate Judge Kay's Order

---

[5] See, e.g., *Thabid v. Bush*, 05-cv-2398 (March 21, 2006) (Huvelle); *Razakah v. Bush*, 05-cv-2370 (March 17, 2006) (Sullivan); *Wahab v. Bush*, 05-cv-886 (January 10, 2006) (Sullivan); *Mohammad v. Bush*, 05-cv-879 (January 9, 2006); *Bostan v. Bush*, 05-cv-883 (January 9, 2006) (Robertson); *Khiali-Gul v. Bush*, 05-cv-877 (January 6, 2006) (Robertson); *Zadran v. Bush*, 05-cv-2367 (April 12, 2006) (Roberts); *Alsaaei v. Bush*, 05-cv-2369 (April 12, 2006) (Roberts); *Said v. Bush*, 05-cv-2384 (April 12, 2006) (Roberts); *Al Shareef v. Bush*, 05-cv-2458 (April 12, 2006) (Roberts); and *Awad v. Bush*, 05-cv-2379 (April 11, 2006) (Robertson).

(attached as Exhibit 1)("Roberts Opinion"), Judge Roberts held that Magistrate Judge Kay's conclusions, based on the text's plain language and normal rules of [textual] construction, were "well-supported in fact and law and [are] not clearly erroneous or contrary to law." Roberts Opinion at 11.

Judge Roberts explained that, not only does the plain language of the Protective Order not require a showing of direct evidence of authorization to represent a detainee as a prerequisite to an in-person meeting, but "[r]equiring a Guantanamo detainee to identify a specific lawyer from among all the volunteer lawyers – most of whom are unknown to the detainee before a meeting – is a meaningless exercise. It would be unconscionable to tether a detainee's access to counsel to such an unworkable prerequisite." *Adem, supra.* at 16.

In reviewing the Government's arguments that the history and context of the text supports their interpretation of the Protective Order (the same arguments made in this case now before the Court)(Resps' Motion at 20-26), Judge Roberts found them "unavailing" where the text affords a straightforward interpretation. Roberts Opinion at 13 (citations omitted). He noted that, contrary to the Government's assertions, "the protective order in [the *Adem*] case is not the product of a negotiated agreement between the parties to *this [Adem]* action. Only the respondents, not the petitioner, in this case were privy to and involved in the negotiation of the Revised Access Procedures that were entered as part of Judge Green's protective order." Accordingly, the intention of the parties in that case could not control an interpretation of the Protective Order at issue. Roberts Order at 13.

7

In this case as well, Magistrate Judge Kay did not commit error in his interpretation of the Protective Order in light of the specific text, the history of the Revised Access Procedures, or their context. Accordingly, this Court is respectfully urged to uphold the Order and allow these Petitioners to meet with their pro bono counsel at last.

### C. The Government has over-dramatized the effect of the Order, improperly characterizing it as "compelled access to wartime detainees in a military facility."

Our government has never before done what it has allegedly done in these Guantanamo cases: imprisoned people without charging them with any wrongdoing; held them in physical isolation; deliberately impeded their access to counsel; subjected them to physical abuse and other mistreatment; and refused even to disclose their identities to the outside world so that legal, humanitarian, and medical assistance could be provided. Now, even though counsel has been secured and petitions filed, the Government seeks to prevent these cases from proceeding.

The Government bitterly complains that the Order forces it "to provide direct, privileged access to wartime detainees in a military detention facility by counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend meeting appropriate standing requirements." Resps' Motion at 32. This is insulting and untrue.

First, the Order merely continues existing practice. The Government previously complied with the Protective Order by allowing counsel – even counsel who brought cases by and through a next friend – at least two visits before insisting upon written evidence of authority. Apparently, this resulted in too many detainees having access to counsel, thereby focusing the attention of the outside world upon them and their

8

conditions. It was the Government's change of position that started the present dispute, not the visits by "counsel merely purporting to represent a detainee."

Second, all counsel for the detainees, who are providing services on a *pro bono* basis and expending significant sums for travel and translators, have security clearance and are bound by the terms of the Protective Order. The risk of unauthorized access to the detainees or other security risks is non-existent. The real issue is the Government's concerted (and so far, successful) attempt to keep these detainees from their lawyer.

Closely related to this issue of barring access is the Government's history of deceiving the Court as to the non-enemy combatant status of Uighur detainees. In the *Qassim* case, CV 05-497(JR), for example, the Government knew for months, but did not disclose to the Court or to Petitioners' counsel, that both petitioners there had been cleared and were deemed to be "No Longer Enemy Combatants."("NEC.") *See* Transcript of August 1, 2005 Status Conf. at 3. It was not until the *Qassim* petitioners' counsel visited them at Guantánamo that they learned the petitioners had been exonerated. *Id.* Likewise here, because of the concededly high number of Uighurs who have been found to be NECs, there is a high probability that one or more of these Petitioners has been cleared. Discovering that fact should not be left to happenstance. Yet the Government is withholding that information[6] and insists that counsel cannot interview the prisoners in person because Petitioners have not adequately explained why they might choose *pro bono* counsel instead of what appears to be permanent incarceration.

Finally, in this case there is ample (and uncontroverted) evidence that these men want a lawyer. There is, in fact, much greater evidence of authority to represent them than has been present in many prior instances in which Respondents have permitted

---

[6] Counsel's September 28, 2005 motion for access to classified CSRT returns is currently pending in this Court.

9

access to detainees. Respondents will suffer no harm if counsel is permitted to confirm their desire by asking them in person if they still want representation.

### D.     The Motion to Stay should be denied

It has been more than nine months since these Petitioners' first asked the Court to look at their case. The Government, nevertheless wants them to wait, while this action is stayed. It argues that counsel must not be allowed to go to the base pending a ruling on the motion for reconsideration. In fact, these Petitioners have been detained incommunicado without charge for years, with no access each other, to family or friends. They are entitled to meet with their lawyer, now. Permitting counsel to visit Petitioners will not implicate "significant separation of powers concerns." Resps' Motion at 34.  Allowing a counsel visit amounts to nothing more than the routine enforcement of a valid Protective Order.  The Government's heated rhetoric does not change this situation, and the Magistrate Judge's Order allowing counsel access should stand.

### CONCLUSION

Petitioners urge that the Court deny Respondents' Motion and permit their counsel to visit with them under the auspices of the Protective Order.

*Cleared with CSO for public filing*

Dated: June 2, 2006                                          COUNSEL FOR PETITIONERS:


Of Counsel:

    Barbara Olshansky  
    Deputy Director                              Elizabeth P. Gilson  
    CENTER FOR CONSTITUTIONAL       CT 002480  
    RIGHTS                                      383 Orange Street  
    666 Broadway, 7th Floor                 New Haven, CT 06511  
    New York, NY 10012                    Telephone:   (203) 777-4050  
    Telephone:   (212) 614-6439           Facsimile:   (203) 787-3259