*CLEARED WITH CSO FOR PUBLIC FILING*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
USAMA HASSAN ABU KABIR,        )
*et al*                        )
    Petitioners    )
                   )    Civil Action No. 05-CV-1704 (JR)
v.                             )
                   )
GEORGE W. BUSH, *et al.*,      )
                   )
    Respondents.               )
_____)

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONERS'
MOTION FOR TEMPORARY RESTRAINING ORDER
<u>AND PRELIMINARY INJUNCTION</u>**

Pursuant to Fed. R. Civ. P. 65 and the All Writs Act, 28 U.S.C. § 1651, and pending final disposition of these *habeas corpus* petitions, Petitioners have moved for a temporary restraining order and a preliminary injunction restraining and enjoining Respondents from detaining Petitioners in any but the least restrictive camp within JTF-GTMO, including, without limitation, that they be barred from any further imprisonment in the isolation regimens of Camp 6. As grounds for this relief, Petitioners say:

**Background**

Petitioners Bahtiyar Mahnut and Arkin Mahmud (hereinafter "Petitioners") are prisoners at the United States Naval Station, Guantánamo Bay, Cuba ("Guantánamo"). Petitioners have been imprisoned at Guantánamo since May, 2002. As detailed in previous filings before this Court, Petitioners are ethnic Uighurs ("WEE-ghurs") from the Xinjiang Uyghur Autonomous Region, a province of the People's Republic of China (also referred to as "East Turkistan"). Uighurs are a Turkic Muslim minority group that has been, and continues to be, brutally

oppressed by the communist Chinese government. The Government has repeatedly and publicly acknowledged that the Uighurs imprisoned at Guantánamo have been eligible for release for at least four years. *See*, *e.g.*, Interview with Colin Powell, Secretary of State, in Washington, D.C., at 5 (Aug. 12, 2004) ("[T]he Uighurs are a difficult problem and we are trying to resolve all issues with respect to all detainees at Guantánamo. The Uighurs are not going back to China, but finding places for them is not a simple matter, but we are trying to find places for them. And we are trying to find places for them, and, of course, all candidate countries are being looked at."). Despite such acknowledgements, Petitioners remain imprisoned at Guantánamo.

On June 20, 2008, pursuant to the Detainee Treatment Act of 2005, the United States Court of Appeals for the District of Columbia held invalid a decision of a Combatant Status Review Tribunal ("CSRT") that Huzaifa Parhat ("Parhat") is an enemy combatant. *Parhat v. Gates*, No. 06-1397. A copy of the Notice summarizing the decision is attached as Exhibit 1 hereto. The court directed the government to release or to transfer Parhat, or expeditiously to hold a new CSRT consistent with the court's opinion.[1]

As to Parhat, the D.C. Circuit has now ruled that the government has failed to make a case for enemy combatant status. The status quo is that the government has no lawful basis to detain Parhat. For the same reason, the government has no lawful basis to detain Petitioners in this action, each of whom was identically situated to Parhat. Moreover, Parhat and these Petitioners were all identically situated to the five Uighurs released to Albania in 2006 after revelation that the military itself had concluded that they were not "enemy combatants."

---

[1] The Court of Appeals is preparing a redacted version of its opinion for public release. We are informed and believe that a copy of the classified opinion has been supplied to the Court.

In late 2006, Petitioners were transferred to conditions of almost complete isolation at Guantanamo's Camp 6. Petitioners have suffered (and on information and belief continue to suffer) astonishingly harsh, and potentially deadly isolation.

## Argument

### A. This Court's Habeas Jurisdiction Gives it Ample Basis to Grant the Relief Requested.

Petitioners expect shortly to move for an order directing their release, if necessary, into the United States. Petitioners expect the government to resist this request for relief. In the interim, however, the Court has broad power to fashion equitable relief as may be necessary in aid of its equity jurisdiction in habeas cases. *See SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996) (noting that the All Writs Act "empowers a district court to issue injunctions to protect its jurisdiction"); *see also Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (noting that centuries of tradition confirm that federal judges have "broad discretion in conditioning a judgment granting habeas relief"); *see* 28 U.S.C. § 2243 (directing courts to "dispose of [a habeas case] as law and justice require"); *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) ("mandate [of § 2243] is broad with respect to the relief that may be granted"); *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (habeas "never has been a static, narrow, formalistic remedy").

The Court also has broad and specific authority to order appropriate relief under habeas corpus, including relief in the nature of bail or parole, addressed to the condition or maintenance of the prisoner prior to final resolution of the *habeas* petition. *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C. Cir. 1969) (noting that a district court has "an inherent power to grant relief *pendente lite*, to grant bail or release, pending determination of the merits" and that "[r]elease is available in a habeas corpus action, which is a civil collateral attack"); *Mapp v. Reno*, 241 F.3d 221, 226

(2d Cir. 2001) (citing to *Baker*, 420 F.2d at 1343); *Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978); *Boyer v. City of Orlando*, 402 F.2d 966, 968 (5th Cir. 1968) (ordering the release of a habeas petitioner on bail pending exhaustion of state and federal remedies).  In addition, the writ of habeas corpus has long dealt with movement of prisoners.  *See, e.g.*, *United States v. Mauro*, 436 U.S. 340, 357 (1978) (power to issue writs of habeas corpus includes authority to issue such a writ when it is necessary to bring a prisoner into court to testify or for trial or to remove a prisoner in order to prosecute him in the proper jurisdiction where offense was committed).

In light of the D.C. Circuit's June 20 ruling, the alarming deterioration in their psychological well-being, and astonishing length of these imprisonments, Petitioners have an urgent need, which cannot be remedied at law, to be protected from further exposure to the harsh regime of Camp 6.  On information and belief, accommodations for Petitioners are immediately available in Camp 4.  Camp 4, on information and belief, (i) already houses one of the Uighurs, Abdulnasir, (ii) permits prisoners to live communally in a bunk-house arrangement, and (iii) represents the least restrictive imprisonment regimen currently available at JTF-GTMO.

Movement to Camp 4 would also assist with the overall goal of helping Petitioners recover from their psychological cruelty of their isolation, and readying them for transfer to the United States or an appropriate country.

**B.     There is an Equitable Basis for Injunctive Relief Here.**

This case does not fall within the Federal Rules of Civil Procedure, but the Court's All Writs authority gives it power to enter injunctions as appropriate.  Reference to the standard for the issuance of injunctions shows that each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction here:  (1) the Petitioners will suffer

irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioners are likely to succeed on the merits of their claims (indeed, the D.C. Circuit's decision in *Parhat v. Gates* provides *certainty* on the merits) and (4) there is a clear public interest in preventing the government from detaining individuals in astonishingly harsh, and potentially deadly isolation, particularly where the government has no lawful basis to detain them.  *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

**C.      Other Matters**

Pursuant to Local Rule 7(m), counsel on June 26, 2008 sought the government's consent to a grant of this relief.  No consent has been given.

As the prisoners are destitute, the Court should waive any requirement for a bond.

A grant of the relief requested herein lies within the sound discretion of the Court.

Petitioners have sought this emergency relief to address only the gravest, most immediate and emergent harms they are unlawfully suffering.  Petitioners reserve all rights to seek other and further relief, and expect to seek such relief by means of further motion.

**WHEREFORE**, Petitioners request that their Motion be allowed, and that they be granted such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: June 26, 2008 | COUNSEL FOR PETITIONERS: |

Of Counsel:

J. Wells Dixon
Wdixon@ccr-ny.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:   (212) 614-6439

_____/s/ Elizabeth P. Gilson_____
Elizabeth P. Gilson
egilson@snet.net
383 Orange Street
New Haven, CT 06511
Telephone:   (203) 777-4050
Facsimile:    (203) 787-3259

- 6 -